Jackie Stuart McMillian appeals from a judgment in favor of defendants Charles A. Fetner, director of Bryce Hospital; Ken Wallis, commissioner of the Alabama Department of Mental Health and Mental Retardation[1]; and Dr. Cynthia Bisbee, Dr. Humphrey Osmond, and Patricia Scheiffler-Roberts — members of the treatment team at Bryce Hospital in charge of David Mayo Stuart, an inmate at Bryce Hospital. (Hereinafter these defendants are collectively referred to as the "Mental Health defendants.")[2] McMillian sued the Mental Health defendants for alleged wrongful and/or negligent release of Stuart from Bryce Hospital, and she sought monetary damages for injuries that she suffered as a result of an assault and battery committed on her by Stuart subsequent to his release. The ultimate issue presented is whether the trial court erred in holding that the defendants were engaged in the exercise of a discretionary function (so as to have substantive immunity) and were therefore immune from suit.
Summary judgment for the defendant is proper when there is no genuine issue of a material fact and the defendant is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. When the defendant has sought a summary judgment, all inferences must be viewed in the light most favorable to the plaintiff, and all reasonable doubts concerning the existence of a genuine issue of material fact must be resolved against the defendant.Wilson v. Brown, 496 So.2d 756 (Ala. 1986). This case was pending on June 11, 1987; therefore, the applicable standard of review is the "scintilla rule." See, Ala. Code 1975, § 12-21-12.
Judge J.B. Baird's "Memorandum Opinion" presented, in complete and masterful fashion, the statement of the case, the statement of the facts, and the applicable law pertaining to substantive immunity. Therefore, we adopt the following portions of Judge Baird's opinion as part of our own:
 "By Order of the Probate Court of Tuscaloosa County dated May 17, 1982, David Stuart was involuntarily civilly committed to the custody of the Department and thereafter admitted to Bryce Hospital. After undergoing treatment for his mental illness, David Stuart was released from Bryce Hospital on trial visit and resided in the home of his aunt, Elizabeth Stuart. The trial visit status of David Stuart continued until February 17, 1984, the date he was officially discharged from Bryce Hospital. During the trial visit time period, David Stuart resided in the home of his aunt and received mental health services from Indian Rivers Community Mental Health and Retardation Center (hereinafter 'Indian Rivers'). . . .
 "From February 17, 1984, the date of release from Bryce Hospital, until April 24, 1985, the date of the assault and battery, David Stuart continued to live in the home of his aunt and continued receiving mental health services from Indian Rivers. During part of this time both [Ms. McMillian] and David Stuart resided with Elizabeth Stuart in her home in Tuscaloosa, Alabama. On April 24, 1985, David Stuart assaulted and beat [Ms. McMillian] while the two were alone at Elizabeth Stuart's home. As a result of said attack and beating, [Ms. McMillian] filed this civil suit on August 25, 1985, against David Stuart. By subsequent amendments, [Ms. McMillian] added Ken Wallis, Charles Fetner, Dr. Humphrey Osmond, Dr. Cynthia Bisbee, and Patricia Scheiffler-Roberts as parties Defendant (hereinafter 'Mental Health Defendants'). *Page 1202 
". . . Count IV[3] of the complaint alleges that the Mental Health Defendants violated the procedures and policies of Bryce Hospital for the release of certain classes of mental patients [in that the] procedures that were in effect at Bryce Hospital on the date David Stuart was placed on trial visit and on the date that he was officially discharged from Bryce Hospital established a Hospital Review Board and required that any patient with a criminal record, history of violent behavior, or adjudication of not guilty by reason of insanity must be referred to the Hospital Review Board prior to release.
"[Ms. McMillian] argues that the Mental Health Defendants either intentionally or negligently released David Stuart in violation of their own rules and regulations and thus acted beyond their authority. The Mental Health Defendants raise the defenses of sovereign immunity as to liability in their official capacities and substantive or discretionary function immunity as to individual liability.
". . . .
"The principles of substantive or discretionary function immunity were first set forth by the Supreme Court of Alabama in the decision ofDeStaffney v. University of Alabama, 413 So.2d 319 [391] (Ala. 1982). In DeStaffney, the Supreme Court stated that the mere characterization of some act or performance of some duty by a State employee as negligent does not necessarily mean that the immunity doctrine does not apply. Even though theState employee Defendant may not be entitled to absoluteimmunity, the Supreme Court held that the doctrine ofsubstantive immunity may be invoked if the employee is engagedin the exercise of a discretionary function. 413 So.2d at 395.
"After DeStaffney, the Supreme Court in Bell v. Chishom,[Chisom] 421 So.2d 1239 (Ala. 1982), held that the governmental interest at stake in discretionary function immunity is 'the ability of public officers to "engage in making a decision by weighing the policies for and against it." ' 431 [421] So.2d at 1241. The Court reasoned that:
 " 'Without some degree of immunity, public officers may decide not on the basis of policy but of avoiding personal liability or vexatious suits. Their motive for doing so may be larger than in the private sector, for governmental action often has unusual potential to injure or to affect large numbers of people. Discretionary function immunity, then, is called for when necessary to preserve the decision-making function of government.
 " '. . . The problem is not to define terms like "discretionary" or "planning" but to make a pragmatic assessment of what, if any, degree of immunity is necessary to enable the particular governmental function to be effectively performed. Thus, Courts must determine not only the existence but the extent of an "immunity," which may be absolute but is more commonly limited to good faith actions.' 421 So.2d at 1241. (Emphasis added.)
"In Deal v. Tannehill Furnace Foundry Commission,443 So.2d 1213 (Ala. 1983), the Supreme Court ruled that the Commission members and the Superintendent of Tannehill State Park were entitled to immunity for injuries sustained by the Plaintiff when, as a visitor, he dived into Mill Creek, located within the park. The Supreme Court reasoned that the decision of the park personnel to maintain Mill Creek without altering its natural beauty and terrain which would have permitted safe swimming 'clearly fell within the exercise of the discretion given to these officials' by their employment thus entitling them to immunity from suit.
". . . .
"In a more recent decision, Barnes v. Dale, 530 So.2d 770
(Ala. 1988), the Supreme Court of Alabama had occasion to discuss substantive or discretionary function immunity in the context of the release *Page 1203 
of an involuntarily civilly committed person from Bryce Hospital. In the Barnes case, the Supreme Court found that a clinical psychologist, a unit coordinator, and a medical doctor at Bryce Hospital were entitled to immunity based upon their decision to release an involuntarily civilly committed person. The Court ruled that:
 " 'The defendants are entitled to substantive immunity as a matter of law, because they were engaged in the exercise of a discretionary public function at the time of [the patient's] admission and discharge. . . . The function that these Defendants and those in similar positions perform in the mental health facilities of this State is of urgent importance to those civilly committed, the families of those committed, and the citizens of Alabama.' 530 So.2d at 784."
As that order indicates, this Court, in Barnes v. Dale,530 So.2d 770 (Ala. 1988), recognized the fact that the very nature of the mental health profession involved discretion and difficult decision making. Realizing the difficulty in interpreting this discretionary function standard (see Barnesv. Dale, supra; Hickman v. Dothan City Bd. of Educ.,421 So.2d 1257 (Ala. 1982); DeStaffney, supra; and Bell v. Chisom,421 So.2d 1239 (Ala. 1982)), this Court must look at the circumstances of each case and focus on the process employed by the defendants in making their decision, in order to decide whether a defendant is immune from liability based on such discretion.
Judge Baird held:
 "The establishment of a Hospital Review Board at Bryce Hospital and a procedure requiring the Hospital Review Board to review certain classes of patients is clearly within the discretionary authority granted to [Fetner] by virtue of his position as Director of Bryce Hospital. [Ms. McMillian] has cited to no statutory authority and the Court has found none that requires the establishment of a Hospital Review Board or [requires] that the Hospital Review Board review any patient prior to release from Bryce Hospital."
We agree with the trial court's holding that no statutory authority requires the establishment of a hospital review board or requires that a hospital review board review any patient with a history of violent behavior or criminal conduct prior to release from Bryce Hospital. Therefore, we hold, as the trial court did, that the very act of implementing a hospital review board was an exercise of discretionary function. Therefore, we affirm as to Fetner[4] and Wallis.[5]
Thus the remaining issue for our review is whether Stuart's release without review by the hospital review board was an exercise of discretion or whether the decision to release Stuart was constrained by internal procedures that required his referral to the hospital review board prior to his release.
In support of their motions for summary judgment, Dr. Bisbee and Ms. Scheiffler-Roberts stated in their affidavits that "[i]t was a professional decision whether or not [Stuart] should have been presented to the Hospital Review Board prior to release" and that "the procedures did not require that [Stuart] be reviewed by the Board prior to his release." They further stated that, although they did not personally release Stuart from Bryce Hospital, it was their professional opinion that "Stuart was appropriate to be released from Bryce Hospital." Dr. Osmond stated that based on his professional judgment he released Stuart after consultation with the other members of the treatment team and that he was within the discretionary authority *Page 1204 
granted to him by the Alabama Department of Mental Health and Mental Retardation.
Thus Dr. Bisbee, Ms. Scheiffler-Roberts, and Dr. Osmond presented a prima facie showing that their decision not to refer Stuart to the hospital review board was based on their professional judgment, evidencing an exercise of discretion. Therefore, it was incumbent upon Ms. McMillian to come forth with evidence to rebut that prima facie showing.
In opposition to Dr. Bisbee's, Ms. Scheiffler-Roberts's, and Dr. Osmond's motions for summary judgment, Ms. McMillian submitted the sworn affidavit of John R. Goff, Ph.D., former chief of psychology at Bryce Hospital, Goff's deposition testimony, and the rules and regulations promulgated by Fetner regarding the review of certain patients by the hospital review board prior to their release, which in pertinent part, are as follows:
 "2. [I]n patients with history of violent behavior in their community, the treatment team in the hospital administration (through designated personnel) will carefully evaluate the patients and take every possible step to assure that he/she is not a danger to his community and to society.
". . . .
 "4. [E]ach treatment team shall consider the following guidelines in reviewing each case.
". . . .
 "h. Any patient with criminal record or history of violent behavior must be referred to the Hospital Review Board prior to release. [Emphasis added.]
 "5. A Hospital Review Board shall be available to review release plans on patients with history of dangerous behavior. . . . The patient will have been evaluated by the team before coming before the Board, allowing the issues to be specific and focused. . . . Written recommendation of the Board shall be made to the Clinical Director and Hospital Director.
 "6. The Hospital Review Board shall consist of two staff psychiatrists and an alternate, social worker, psychologist, and a member of the administration. The Board shall be appointed by the Hospital Director with the approval of the Associate Commissioner for Mental Illness.
". . . .
 "8. 'Release' as used in this policy and procedure shall include discharge. . . .
 "9. The attending psychiatrist should make the request for review to the chairman of the Hospital Review Board."
Dr. Goff stated in his affidavit that "the Review Board was responsible to review the cases of all individuals scheduled for release who had . . . violent histories in the community; . . . [t]his was a primary function of the board; [t]his was not considered to be a matter of choice by the treating personnel, but was, rather, a requirement of policy; [w]hile a discretionary issue may have been present, that discretionary issue was whether or not the opinion of the Hospital Review Board would necessarily override the treating personnel." Dr. Goff further stated in his affidavit, which was supported by his deposition testimony, as follows:
 "[M]y review of the records of the hospitalization prior to the release [of Stuart] and his previous hospitalizations leads me to the opinion that [Stuart] did have a violent history in the community prior to his admission and that he had demonstrated episodes of violent behavior actually during the hospitalization. In particular, [Stuart] had attacked a mental health worker and stabbed him in the face with the spoken intent to kill him. These facts were available to treating personnel and as a matter of fact were referred to in [Stuart's] discharge summary. According to Bryce Hospital Policy at that time, [Stuart] should therefore have been referred to the Review Board for review of this case and recommendations prior to discharge. This did not occur. . . . *Page 1205 
 "The hospital Review Board, in my opinion, would not have made a recommendation for the release of David Mayo Stuart back to his previous placement with his aunt. [Stuart] had demonstrated violence towards his aunt on previous occasions and records indicate a pattern of behavior which would suggest a recurrence of such violent behavior. . . ."
Without question, the matters material to the issue before us are based almost exclusively on Stuart's hospital records, which could possibly reveal a history of violent behavior that, under the established mandatory procedures implemented for the hospital review board, would have required that the treatment team refer Stuart to that board prior to his release. We have searched the record on appeal for Stuart's hospital records that show a history of violent behavior. However, we found no such medical records or certified copies thereof pertaining to Stuart. Nothing in the record affirmatively shows that Dr. Goff had personal knowledge of Stuart's behavioral history. Thus, without the hospital records themselves, Dr. Goff's affidavit and his deposition testimony purporting to describe the substance or contents of these records constitute inadmissible hearsay. See Rule 56(b), Ala.R.Civ.P.; see, also, Welch v.Houston County Hospital Board, 502 So.2d 340 (Ala. 1987).
However, in Perry v. Mobile County, 533 So.2d 602, 604-05
(Ala. 1988), adopting the language from C. Wright, A. Miller, and M. Kane, Federal Practice and Procedure: Civil 2d § 2738 (1983), we held:
 " 'A party must move to strike an affidavit that violates Rule 56(e); if he fails to do so, he will waive his objection and, in the absence of a "gross miscarriage of justice," the court may consider the defective affidavit. This principle applies to affidavits containing evidence that would not be admissible at trial as well as to affidavits that are defective in form. The motion to strike must be timely, [and] the decision on that question is left to the discretion of the trial judge. It is clear that a motion to strike presented for the first time on appeal comes too late.
 " 'The court will disregard only the inadmissible portion of the challenged affidavit and consider the rest of it. . . . [A] motion to strike should specify the objectionable portions of the affidavit and the grounds for each objection. A motion asserting only a general challenge to an affidavit will be ineffective.'
 "The foregoing is applicable equally to those affidavits in support of a motion for summary judgment and to those in opposition to such a motion."
This Court may have caused some confusion among the bench and bar as to whether a party must move to strike an affidavit or must object to questions propounded in depositions in order to keep objectionable evidence from being considered by the trial court in ruling on a motion for summary judgment. Welch v.Houston County Hospital Board, supra; Perry v. Mobile County, supra. We hope to clarify this by this opinion.
In the instant case, Dr. Bisbee, Ms. Scheiffler-Roberts, and Dr. Osmond filed no motion to strike and entered no objections to Goff's affidavit or deposition testimony. No ruling on the matter was invoked. See Perry v. Mobile County, supra. Because they did not call the court's attention to the fact that Goff's affidavit was inadmissible, they waived any objection to our considering the evidence contained in that affidavit. Likewise, because Dr. Bisbee, Ms. Scheiffler-Roberts, and Dr. Osmond did not call the court's attention to the fact that Goff's deposition was inadmissible, under the rationale of Perry v.Mobile County, supra, they waived any objection to our considering the evidence contained in that deposition. Therefore, considering Goff's affidavit and deposition testimony, we hold that Ms. McMillian presented a scintilla of evidence that Dr. Bisbee, Ms. Scheiffler-Roberts, and Dr. Osmond were not exercising a discretionary function and thus were not entitled to the umbrella of substantive, qualified immunity *Page 1206 
from liability for their failure to refer Stuart to the hospital review board prior to his release.
Based on the foregoing, we must reverse the summary judgment in favor of Dr. Bisbee, Ms. Scheiffler-Roberts, and Dr. Osmond-members of the treatment team at Bryce Hospital in charge of Stuart — and we remand this cause for further proceedings consistent with this opinion as to these defendants. We affirm as to the other defendants.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., concur.
[1] As we point out in footnote five, there is no indication in the record that Wallis had any involvement in the events leading to this lawsuit except in his official capacity. He no longer holds the commissioner's office. See Rule 43(b), Ala.R.App.P.
[2] Originally Ms. McMillian also named Dr. Alan Goodwin, executive director of Indian Rivers Community Mental Health and Retardation Center, as a party defendant, but she later dismissed him.
[3] Although Ms. McMillian's complaint against the Mental Health defendants contains three other counts, they are not involved in this appeal.
[4] Ms. McMillian presented no evidence that Fetner had any involvement in the decision not to refer Stuart to the hospital review board or in the decision to release Stuart from Bryce Hospital, other than in his capacity as director of Bryce Hospital.
[5] Ms. McMillian presented no evidence that Wallis exercised any control over the administrative or clinical functions of Bryce Hospital or had any involvement in the decision to release Stuart from Bryce Hospital, other than in his capacity as commissioner of the Department of Mental Health and Mental Retardation.