ALMON, Justice.
Rose Manor Health Care, Inc. (“Rose Manor”), appeals from a summary judgment, made final under Rule 54(b), Ala. R.Civ.P., awarding Barnhardt Manufacturing Company, Inc. (“Barnhardt”), $11,- *359 653.50 on its claims for goods sold and delivered or for an amount due on an open account. Rose Manor filed a third-party-complaint against Southern Health Enterprises, Inc. (“Southern Health”), alleging that the goods in question were sold and delivered to Southern Health and that at the relevant time Southern Health was acting as an independent contractor operating the nursing home formerly operated by Rose Manor. In an affidavit in support of its motion for summary judgment, Barn-hardt’s affiant made reference to, but did not attach, the invoices for the goods in question. Rose Manor argues that the court erred in entering the summary judgment because, it says (1) Barnhardt’s failure to attach the invoices to its affidavit compels a conclusion that its motion was not supported by evidence showing the absence of a genuine issue of material fact; (2) Barnhardt failed to offer any proof that Southern Health was acting as Rose Man- or’s agent in purchasing the goods; and (3) Rose Manor’s third-party claim against Southern Health is so intertwined with Barnhardt’s claim against Rose Manor that it was error to make a Rule 54(b) order of finality before the third-party complaint was decided.
In support of its motion for summary judgment, Barnhardt submitted a supporting affidavit from its vice-president, who stated:
“I have personal knowledge of the facts and circumstances underlying this action and make this affidavit based on my review of Barnhardt’s books and records kept in the ordinary course of business and in support of Barnhardt’s motion for summary judgment.
“Between May 1989 and September 1989, Barnhardt sold and delivered to defendant Rose Manor Health Care, Inc. certain goods as more particularly described in the invoices attached hereto as Exhibit ‘A’.
“Defendant accepted the goods, but has failed to pay for said goods. There is due, owing and unpaid to Barnhardt, after allowance for all offsets, payments and credits, the sum of $9,990.54, plus prejudgment interest of $752.76 through December 31, 1989 calculated at the rate of six percent (6%) from September 28, 1989. Prejudgment interest continues to accrue at $1.64 per diem.”
Rose Manor states that the invoices referred to in this affidavit were not attached, and the invoices are not included in the record on appeal.
Rose Manor submitted an affidavit of its president and sole shareholder that stated as follows:
“On January 1, 1988, Rose Manor Health Care, Inc. did contract with Southern Health Enterprises, Inc., which contract provided effectively for a sublease of the nursing home known as Rose Manor Nursing Home to Southern Health Enterprises, and from January 1, 1988, through October 30,1989, Southern Health Enterprises, Inc. exclusively operated and managed the Rose Manor Nursing Home.
“Since January 1, 1988, Rose Manor Health Care, Inc., has not operated or managed, and did not reserve the right to operate or manage and did not reserve the right to control the operation or management of the Rose Manor Nursing Home.
“Since January 15, 1988, Rose Manor Health Care, Inc., has operated solely as a real estate investor and landlord and has conducted no other business whatsoever, and has had no employees.
“Rose Manor Health Care, Inc. has never contracted with or offered to contract with plaintiff for the goods the subject of this action. Nor has Rose Manor Health Care, Inc. authorized any other entity to contract with plaintiff for such goods.
. “Rose Manor Health Care, Inc. has never received or accepted any of the goods the subject of this action.
“Prior to the filing of the instant action, Rose Manor Health Care, Inc. never received any of the invoices the subject of this action from plaintiff.”
Barnhardt responded with an amended affidavit from its vice-president that stated as follows:
*360 “On February 17, 1987 Barnhardt was contacted by Rose Manor Health Care, Inc. which asked to open a trade account with our company. A copy of the new customer computer master file sheet is attached hereto as Exhibit ‘A’ and incorporated herein by reference.
“Subsequent to February 17, 1987 Barnhardt shipped goods to Rose Manor Health Care, Inc. and received payment in return therefor. The trade relationship between Barnhardt and Rose Manor Health Care, Inc. had continued from February 17, 1987 through the most recent invoices which are the basis of this civil action.
“Each and every invoice which has been issued with respect to this account has indicated that the goods were sold to Rose Manor Health Care, Inc. at 7755 Fourth Avenue South, Birmingham, Alabama 35206. At no time was Barnhardt advised that it should change how it invoiced for goods sold or that Southern Health Enterprises, Inc. was the proper party in the sales transactions.
“At no time was Barnhardt contacted by any of the principals of Rose Manor Health Care, Inc. and advised that Southern Health Enterprises, Inc. was not authorized to purchase goods in the name of Rose Manor Health Care, Inc.”
Rose Manor offered no evidence in opposition to Barnhardt’s evidence that Rose Manor[1] opened an account with Barnhardt in 1987 and that Barnhardt thereafter sold goods on the credit of that account. It treats the complaint as being premised on a theory that the goods were sold to Southern Health as agent for Rose Manor, but we do not so read the complaint. Instead, we read the complaint and the affidavits offered by Barnhardt as proceeding on the theory that Rose Manor Health Care, Inc., opened a credit account with Barnhardt for delivery of goods on credit to its nursing home premises at a certain address, that Rose Manor did not notify Barnhardt to stop delivering goods on the credit of that account when Rose Manor transferred the right to operate the nursing home to Southern Health, and that Rose Manor is therefore liable under its account for goods delivered to the nursing home.
Nothing in the affidavit of Rose Manor’s president effectively responds to the claim of open account as thus presented in the complaint, the motion for summary judgment, and the affidavits in support of Barnhardt’s motion for summary judgment. Barnhardt’s vice-president stated in affidavit that Rose Manor opened the account, that it did not notify Barnhardt that the account should be closed or that another entity was operating the nursing home, that Barnhardt continued to supply goods on the credit of Rose Manor’s account, and that Barnhardt had not been paid for goods delivered and credited to the account. These facts sufficiently establish a claim against Rose Manor on an open account.
“[I]n order to establish an open account there must be an account based upon running or concurrent dealings, the dealings must not have been closed, settled or stated, and some term of the contract must remain to be settled between the parties, or the agreement must contemplate further transactions between the parties.”
1 C.J.S. Account, Action on, § 3 at 606-07 (1985).
Barnhardt’s affiant, James H. Barn-hardt, Jr., stated that he made the statements of his own personal knowledge and based on his familiarity with Barnhardt’s books and records. See Rule 56(e), Ala. R.Civ.P. Therefore, the failure to attach *361 the invoices was not fatal to Bamhardt’s summary judgment motion, at least in the absence of any response by Rose Manor that made the invoices themselves crucial to the decision in the case.
Nor does the fact that the third-party complaint against Southern Health is still pending provide a basis for reversing the summary judgment. Mere speculation by Rose Manor that Southern Health might controvert Barnhardt’s evidence does not provide any pertinent opposition to Barn-hardt’s summary judgment motion. “Summary judgment is not prevented by ‘conclu-sory allegations’ or ‘speculation’ that a fact issue exists.” Riggs v. Bell, 564 So.2d 882, 885 (Ala.1990) (citations omitted).
AFFIRMED.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur.

. As we noted at the beginning of the opinion, we use the name “Rose Manor” strictly to refer to the defendant corporation, Rose Manor Health Care, Inc. It is undisputed that this entity opened the account in February 1987. The affidavit of Rose Manor’s president shows that Rose Manor was aware that Southern Health continued to operate the nursing home under the name "Rose Manor Nursing Home.” This awareness is all the more reason that Rose Manor should have closed the account in its corporate name. The fact that the business did not change names is strong evidence that Barn-hardt had no notice that a different entity was operating the business, and there is no evidence that it did have such notice; indeed, it continued to bill to "Rose Manor Health Care, Inc.”