45 So.3d 735 (2010)
Charles H. STEPHENS
v.
FIRST COMMERCIAL BANK.
1080648.
Supreme Court of Alabama.
Decided March 12, 2010.
*736 Bruce F. Rogers and John W. Clark IV of Bainbridge, Mims, Rogers & Smith, LLP, Birmingham, for appellant.
Daniel D. Sparks and Courtney L. Saad of Christian & Small, LLP, Birmingham, for appellee.
STUART, Justice.
First Commercial Bank ("FCB") sued Charles H. Stephens in the Jefferson Circuit Court, alleging that Stephens had defaulted on a $648,118 promissory note he had executed in favor of FCB. The trial court entered a summary judgment in favor of FCB awarding it $737,686, and Stephens appealed. We affirm.

I.
Beginning in January 2005, Stephens signed and renewed a series of promissory notes with FCB, each in an amount of approximately $650,000. On November 7, 2007, Stephens paid off a previous promissory note and executed the promissory note at issue in this case, the value of which was $648,118. At some point thereafter, FCB adjudged that Stephens was in default on the promissory note. On approximately August 26, 2008, FCB demanded that Stephens immediately remit payment of all sums owed FCB under the note and/or that Stephens put up collateral to provide security for his indebtedness, two remedies specifically provided for by the terms of the promissory note. On September 12, 2008, after Stephens failed to comply with its request, FCB filed a breach-of-contract action against Stephens in the Jefferson Circuit Court, seeking payment of the amount of the promissory note, plus interest, late fees, attorney fees, and court costs. In his answer to FCB's complaint, Stephens acknowledged that he had executed the $648,118 promissory note, but he denied that he was in default on the note.
On November 7, 2008, FCB moved for a summary judgment. FCB supported that motion with a copy of the promissory note and an affidavit from Andrew Brown, an assistant vice president at FCB. In that affidavit, Brown stated, in part:
"I am authorized by [FCB] to make this affidavit. The books, records and accounts of [FCB] with regard to the contractual obligations of [Stephens] are kept and maintained in the ordinary course of [FCB]'s business under my joint supervision and control along with other employees of the company. Any information set forth below with regard to said records is true, valid and correct as reflected upon [FCB]'s books and records. I do certify that all credits due thereon have been applied, and that the balance claimed is due and unpaid. I further state that I have personal knowledge of the matters set forth herein."
Brown also declared in the affidavit that Stephens had defaulted on the promissory note and stated that Stephens had been sent a letter on August 26, 2008, detailing the basis of FCB's decision finding him in default. Finally, Brown also outlined the damages FCB was claiming.
On December 3, 2008, Stephens filed his response to FCB's summary-judgment motion. *737 Stephens submitted no evidence with his response; instead, he argued that FCB had failed to establish, through competent evidence, that there were no disputed issues of material fact, because, he alleged, Brown's affidavit violated the best-evidence rule and consisted solely of hearsay, rendering it inadmissible.[1] Alternatively, in the event the trial court deemed FCB's evidence to be admissible and sufficient to meet its burden on summary judgment, Stephens asked the trial court, pursuant to Rule 56(f), Ala. R. Civ. P., to delay ruling on FCB's summary-judgment motion until he had additional time to conduct discovery. Contemporaneously with his motion opposing summary judgment, Stephens filed a discovery request asking FCB to produce its records relating to Stephens and a motion formally asking the trial court to strike Brown's affidavit pursuant to the best-evidence rule or as inadmissible hearsay.
On December 5, 2008, the trial court entered an order granting Stephens's Rule 56(f) request and stating that it would allow the parties to conduct discovery through January 5, 2009. The court also stated that it would consider the parties' outstanding motions at a hearing on January 6, 2009. It is not clear from the record what, if any, discovery Stephens conducted during that 31-day discovery period; however, he submitted no evidence in opposition to FCB's summary-judgment motion before the January 6, 2009, hearing. At the conclusion of that hearing, the trial court orally granted FCB's summary-judgment motion, and it subsequently entered a written order setting the damages at $737,686, including a principal amount of $648,118, accrued interest of $23,755, late fees of $176, and attorney fees of $65,637. Stephens then timely filed his notice of appeal to this Court.
II.
"This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce `substantial evidence' as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989); Ala.Code 1975, § 12-21-12."
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).

III.
On appeal, Stephens argues that FCB failed to establish by competent evidence that he had defaulted on the promissory note or what its damages were even if such a default was established. The only evidence submitted by FCB other than the promissory note itself, Stephens notes, was Brown's affidavit, which, he alleges, was inadmissible because it violated the best-evidence *738 rule and/or the rule prohibiting hearsay in that it "simply repeats statements and facts contained within [FCB's] books and records." Stephens's brief, p. 12. Accordingly, Stephens argues, because "Rule 56, Ala. R. Civ. P., requires that a motion for summary judgment be supported by facts that would be `admissible in evidence,'" Aldridge v. Daimler-Chrysler Corp., 809 So.2d 785, 797 (Ala. 2001), FCB failed to make a prima facie showing that there was no genuine issue of material fact, and, he says, summary judgment was therefore inappropriate.
Stephens is correct that the best-evidence rule or the hearsay prohibition would render Brown's affidavit inadmissible if Brown were simply reciting facts he learned by examining FCB's books and records. In such a case, those books and records would themselves be the best evidence of the asserted facts, and they would themselves be able to directly "state" the facts at issue. However, although Stephens asserts that Brown has, in his affidavit, simply repeated statements and facts contained within FCB's books and records, he overlooks the fact that Brown also swore in his affidavit that "I have personal knowledge of the matters set forth herein." "[W]hen a witness testifies based upon his own personal knowledge, independent from any document, the `best evidence' rule does not apply." Ex parte Walker, 623 So.2d 281, 284 (Ala.1992). See also Rose Manor Health Care, Inc. v. Barnhardt Mfg. Co., 608 So.2d 358, 360-61 (Ala.1992) ("[The appellee's affiant] stated that he made the statements of his own personal knowledge and based on his familiarity with [the appellee's] books and records. . . . Therefore, the failure to attach the invoices was not fatal to [the appellee's] summary-judgment motion, at least in the absence of any response by Rose Manor that made the invoices themselves crucial to the decision in the case."). Likewise, if Brown is testifying based upon his personal knowledge and not merely repeating the contents of documents, his statements are by definition not hearsay.
Stephens nevertheless argues that "it is apparent that none of the evidence presented to the trial court was within the `personal knowledge' of Mr. Brown." Stephens's brief, p. 13. In previous cases, we have held testimony inadmissible under the best-evidence rule or the hearsay prohibition, but only when it was readily evident that the witness had no personal knowledge of the facts he or she testified to. See, e.g., Ex parte Walker, 623 So.2d at 284 (applying best-evidence rule where it was clear from the record that a bookkeeper's testimony was based exclusively on books and records of the business and not personal knowledge); Ex parte Head, 572 So.2d 1276, 1281 (Ala.1990) (holding that "testimony regarding the relationships among the defendants, purportedly made `from personal knowledge' gained from the records of the probate court," was inadmissible where "no copies of the probate records from which [the affiant] gained her `personal knowledge' were provided with [the] affidavit"); McMillian v. Wallis, 567 So.2d 1199, 1205 (Ala.1990) (holding that a doctor's affidavit and deposition testimony describing the contents of an individual's hospital records were inadmissible hearsay where nothing in the record indicated that the doctor had any personal knowledge of the individual's history); and Home Bank of Guntersville v. Perpetual Fed. Sav. & Loan Ass'n, 547 So.2d 840, 841-42 (Ala.1989) (holding that affidavit filed by defendant's attorney was inadmissible hearsay where "[i]t appears from the face of the affidavit that his information concerning these matters must have come to him from his client or from others").
*739 However, we cannot agree that, in the present case, it is clear that none of the assertions made by Brown was based on personal knowledge. Unlike the doctor-affiant in McMillian, who expressly stated that he formed his expert opinion based upon "my review of the records of the hospitalization," 567 So.2d at 1204, and the affiant in Ex parte Head, who stated that he had "`examined the records of the Probate Court of Jefferson County, Alabama, for the purpose of determining the legal relationship of the parties in [this] case as the relationship is disclosed in those records,'" 572 So.2d at 1277, Brown unequivocally states in his affidavit that "I have personal knowledge of the matters set forth herein." Although Stephens disputes that statement, he submitted no evidence that would indicate that the statement is false or that it was made in bad faith. In light of the fact that Brown's affidavit was filed with FCB's motion for a summary judgment on November 7, 2008, and that the trial court expressly delayed ruling on that summary-judgment motion until January 6, 2009, in order to give Stephens time to conduct discovery, Stephens had ample time in which to question Brown as to the source of his personal knowledge, either by interrogatories or by deposition. He apparently elected not to do so. In the absence of any evidence indicating that Brown's affidavit was not based upon his personal knowledge, the trial court correctly considered the affidavit as evidence, because neither the best-evidence rule nor the rule prohibiting hearsay is applicable here.[2]
Stephens also argues that, even if we hold that Brown's affidavit is admissible, there is no undisputed evidence that he defaulted on the promissory note or of the amount of the alleged default. Stephens argues that although FCB stated in the narrative summary of undisputed facts it submitted to the trial court with its summary-judgment motion that Stephens had defaulted on the promissory note, he, in fact, did dispute that fact and stated as much in his answer. His answer does indicate that he denied being in default; however, after Brown stated in his affidavit that "Stephens later defaulted under the terms of the [promissory note executed on November 7, 2007]," Stephens submitted no evidence disputing that assertion. Neither did Stephens submit evidence disputing Brown's statement, at the time Brown's affidavit was filed, that "[a]s of October 22, 2008, Stephens is obligated to FCB in the principal amount of $648,118.41, plus accrued interest of $8,074.42, late fees of $175.53, for a total of $656,368.36, plus court costs and attorney fees." Rule 56(e) is clear that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." The evidence before the trial court was undisputed, and the trial court was accordingly correct in granting FCB's motion for a summary judgment.

IV.
FCB sued Stephens, alleging that he had defaulted on a promissory note. FCB *740 thereafter moved for a summary judgment, supporting its motion with a copy of the promissory note and Brown's affidavit. Stephens submitted no evidence in opposition to FCB's summary-judgment motion, notwithstanding the fact that the trial court granted his Rule 56(f) request to allow him sufficient time to conduct discovery and to obtain evidence to prepare such a response. Because FCB's motion for a summary judgment adequately established that there was no genuine issue of material fact and because Stephens submitted no evidence to the contrary, the trial court correctly entered a judgment in favor of FCB; that judgment is affirmed.
AFFIRMED.
COBB, C.J., and LYONS and BOLIN, JJ., concur.
MURDOCK, J., concurs in the result.
MURDOCK, Justice (concurring in the result).
I concur in the result because I believe the best-evidence rule simply is inapposite to this case and to Andrew Brown's testimony as to whether Charles H. Stephens was in fact delinquent in his payments on the promissory note he had executed in favor of First Commercial Bank ("FCB").
The best-evidence rule applies when the terms of a writing, as such, are at issue.
"When a party wishes to prove the terms of a writing, the original itself must be introduced into evidence if available. The original is said to be the best evidence of its terms and, consequently, is to be desired above such secondary evidence as a copy or oral testimony. A witness, therefore, cannot testify to the terms of a writing unless the original of that writing is shown to be unavailable."
II Charles W. Gamble and Robert J. Goodwin, McElroy's Alabama Evidence § 212.01(1) (6th ed.2009) (footnotes omitted; emphasis added).
"The best evidence rule has as its basic justification the prevention of fraud. This is based upon the premise that one allowed to give oral testimony as to the contents of a writing may be likely to construe the provisions in favor of his position in the case. A second justification for the rule is that oral testimony, or other secondary evidence, simply is not as reliable as the written word. If one is allowed orally to give the details of a written document, for example, the misapplication, misapprehension, omission, or addition of a single word may often change the character of the written declaration and the meaning of the party who made it."
McElroy's Alabama Evidence § 212.02 (footnotes omitted). See also, e.g., Rose Manor Health Care, Inc. v. Barnhardt Mfg. Co., 608 So.2d 358, 360-61 (Ala.1992) ("[T]he failure to attach the invoices was not fatal to [the appellee's] summary-judgment motion, at least in the absence of any response by [the appellant] that made the invoices themselves crucial to the decision in the case." (emphasis added)).
Unlike, for example, a contract that has been reduced to writingwhere it matters what that particular document saysthe content of FCB's books and records themselves is not the issue here. The issue is whether Stephens was in fact late in his payments. As to this issue, Brown gave testimony based on his "personal knowledge." See, e.g., Lipscomb v. Tucker, 294 Ala. 246, 255-56, 314 So.2d 840, 847-48 (1975) (upholding the admissibility of the personal-knowledge testimony of a witness as to his mortgage-payment history in the face of an objection that the "best-evidence rule" required instead the introduction of applicable records).
*741 It is true that Brown also testified in his affidavit that the books and records of FCB are maintained in the ordinary course of FCB's business and under his supervision and control and that "any information set forth below with regard to said records is true, valid and correct as reflected upon [those] books and records." Even if the viability of Brown's testimony were deemed to depend upon the admissibility of these passages, I find these passages not to be materially different than those to which approval was given in Real Coal, Inc. v. Thompson Tractor Co., 379 So.2d 1249, 1250 (Ala.1980) (in which the vice president of a company testified: "`I have personally reviewed the books and records of the company with respect to the obligations of the defendants to plaintiff and have caused the attached exhibits to be prepared to reflect the items which comprised each account.'"). I find Ex parte Walker, 623 So.2d 281 (Ala.1992), distinguishable from the present case.
NOTES
[1] The best-evidence rule is articulated as follows in Rule 1002, Ala. R. Evid.: "To prove the content of a writing, the original writing is required, except as otherwise provided by statute, these rules, or by other rules applicable in the courts of this state."
[2] Had Stephens obtained and submitted evidence in response to FCB's summary-judgment motion calling into question the source of Brown's knowledge, that response might have "made [FCB's books and records] crucial to the decision in the case." See Rose Manor Health Care, 608 So.2d at 360-61 ("[The appellee's affiant] stated that he made the statements of his own personal knowledge and based on his familiarity with [the appellee's] books and records. . . . Therefore, the failure to attach the invoices was not fatal to [the appellee's] summary-judgment motion, at least in the absence of any response by Rose Manor that made the invoices themselves crucial to the decision in the case.").