PER CURIAM.
Felisha Bailey ("the employee") was employed by Jacksonville Health and Rehabilitation Center ("the employer") as a certified nursing assistant. In January 2013, she sued the employer and Millennium Risk Managers, the employer's workers' compensation claims administrator, in the Calhoun Circuit Court ("the trial court"). In her complaint, the employee sought from the employer benefits under the Alabama Workers' Compensation Act, codified at Ala. Code 1975, § 25-5-1 et seq. ("the Act"), for her alleged contraction of scabies and her alleged resulting psychological injuries. In count two of her complaint, the employee sought damages for the tort of outrage from the employer and Millennium Risk Managers. The trial court dismissed the tort-of-outrage claim in May *501 2013, and the workers' compensation action proceeded solely against the employer.
In August 2016, the employer moved for a summary judgment in its favor. In that motion, the employer argued that the employee had not contracted scabies and that she had not suffered a psychological injury compensable under the Act and that she was therefore not entitled to workers' compensation benefits. The employer's motion was supported by excerpts from the employee's deposition, excerpts from the deposition of Dr. Janet Cash,[1] and an affidavit from Dr. Glenn O. Archibald. The employee responded to the motion, filing in opposition to the motion copies of certain medical records.[2] After a hearing, the trial court entered a judgment in favor of the employer. The employee timely appealed.
We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Rule 56(c)(3) ; see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala. 1992). If the movant meets that burden, "the burden then shifts to the nonmovant to rebut the movant's prima facie showing by 'substantial evidence.' " Lee, 592 So.2d at 1038 (footnote omitted). "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989) ; see Ala. Code 1975, § 12-21-12(d). Furthermore, when reviewing a summary judgment, the appellate court must view all the evidence in a light most favorable to the nonmovant and must entertain all reasonable inferences from the evidence that a jury would be entitled to draw. See Nationwide Prop. & Cas. Co. v. DPF Architects, P.C., 792 So.2d 369, 372 (Ala. 2000) ; and Fuqua v. Ingersoll-Rand Co., 591 So.2d 486, 487 (Ala. 1991).
The facts contained in the exhibits supporting and opposing the motion for a summary judgment are as follows. In June 2012, the employee noticed a rash on her arms and face. The employee explained that the employer had experienced an outbreak of scabies at its facility during this time frame. The employee admitted that she could not diagnose herself with scabies because "it is not like you can just look at your skin and say 'oh, I've got scabies.' "
*502 She also testified in her deposition that she knew that she had lice in June 2012 because she could see the lice; however, she also said that the "white stuff" in her hair could have been dandruff. She reported that she had requested that the employer provide medication to treat her rash and that Bonita Golding, the director of nursing for the employer, had supplied the employee with medication.
The employee then sought treatment from her personal physician, Dr. Johnnie Stevens, on June 25, 2012. The employee reported to Dr. Stevens that she had been exposed to scabies and lice during her employment. Medical records from Dr. Stevens indicate that he diagnosed the employee with "a rash that is erythematous urticarial." Dr. Stevens prescribed an injection of Decadron and several other medications, including Elimite, Ivermectin, Vistaril, and DexPak. The medical records indicate that Dr. Stevens instructed the employee to "follow up as needed, if not better in 3 to 4 days."
The employee sought additional medical treatment at the Stringfellow Memorial Hospital emergency room ("the emergency room") on June 28, 2012. The record from the employee's visit on that date indicates that she was seen by Dr. Kevin Sells, to whom she reported that her place of employment had suffered an outbreak of scabies. The medical record also indicates that the employee reported that "the scabies are coming out." According to the medical record, Dr. Sells diagnosed the employee with scabies and instructed her on the treatment of scabies. Like Dr. Stevens, Dr. Sells prescribed Decadron, Vistaril, and Elimite; in addition, Dr. Sells prescribed prednisone. The employee's discharge instructions were to see Dr. Mohammad Ismail in two to three days for a "recheck."
The employee returned to the emergency room on July 1, 2012, and was again treated by Dr. Sells. The record from the July 1, 2012, visit contains the following description of the employee's condition:
"The [employee's] rash thought to be caused by scabies. The rash is located on the body diffusely. The rash can be described as erythematous, papular, consistent with scabies infestation.... [The employee's] husband states that 'her nerves are driving her crazy and she is driving me crazy.' [The employee] states that she continues to itch."
The July 1, 2012, record indicates that Dr. Sells's impression was "Scabies, Anxiety Reaction." Dr. Sells administered an injection of hydroxyzine to the employee at the July 1, 2012, visit.
The employee was examined by Dr. Michael K. Morris on July 10 and 19, 2012. Dr. Morris's notes indicate that the employee reported that she was being treated for scabies. His examination of the employee on July 10, 2012, revealed no rash on her neck, face, or hands, but he noted that examination of the employee's limbs revealed "several punctuate [sic] lesions with scabs." Upon his reexamination of the employee on July 19, 2012, Dr. Morris noted "no rash, including no punctuate [sic] lesion, scabs, or burrowing" on her limbs. Dr. Morris diagnosed the employee with a mite infestation.
Dr. Janet Cash, a dermatologist, examined the employee on October 11, 2012. She testified in her deposition that the employee was not suffering from scabies at the time of the October 2012 appointment. Dr. Cash noted that the employee had reported that she had scabies on her face and scalp, which, according to Dr. Cash, scabies do not inhabit. In addition, Dr. Cash said that the employee testified that she had seen the scabies "coming out," which Dr. Cash explained was not possible because scabies are microscopic parasites. Dr. Cash also pointed out that Dr. Stevens, *503 who saw the employee in June 2012, had diagnosed the employee with "a rash that is erythematous urticarial," which, Dr. Cash explained, is, in common parlance, hives resulting from an allergic reaction.
Dr. Cash further testified that, although she was aware that other physicians had diagnosed the employee with scabies, she had not seen any evidence or documentation that supported that diagnosis; notably, Dr. Cash said, other physicians had not performed objective testing to confirm the diagnosis. According to Dr. Cash, scabies cannot be diagnosed merely by examining a patient's rash. She said that other rashes have a similar appearance to that of a scabies rash. Dr. Cash explained that, to verify that a patient is suffering from scabies, a skin scraping or biopsy must be performed and the sample examined under a microscope. Dr. Cash opined that, based on her examination of the employee, the employee likely never had scabies; however, she indicated that, had the employee had scabies in June or July 2012, she would not have had an infestation in October 2012 if she had taken the medications she had been prescribed, including Elimite, which, Dr. Cash said, was the standard prescription for the treatment of scabies.
Dr. Cash also opined that the employee likely suffered from an underlying psychological issue. In fact, Dr. Cash recommended that the employee undergo a psychiatric evaluation. Dr. Cash said that the employee appeared to be suffering from delusional parasitosis, which is a disorder that causes a person to believe that they are being infested by parasites. According to Dr. Cash, the employee brought to her appointment a medication bottle and a plastic sandwich bag that, the employee said, contained bugs that had crawled from her skin. Dr. Cash said that she had examined the material contained in the bottle and the bag and that no scabies or other parasitic organisms were present. Dr. Cash explained that delusional parasitosis arises from an underlying anxiety problem. Although she testified that she was unaware of any case where the disorder was caused, or contributed to, by a case of scabies, she said that, if a patient had an underlying psychological condition, she "supposed" that delusional parasitosis"could" be triggered by a scabies infestation. However, Dr. Cash also testified that the employee's psychological problems were not, in her opinion, related to the employee's employment.
Dr. Archibald's affidavit indicated that he had seen the employee for the first time in February 2013 and approximately every two months thereafter. He stated that he had diagnosed the employee with "major depressive disorder, severe, with psychotic features." In his affidavit, which was made in support of a guardianship petition, he opined that the employee has "a disability that interferes with her ability to make or communicate responsible decisions regarding health care, food, clothing, shelter, or administration of property." He explained in further detail that
"[the employee] is so bothered by symptoms of severe anxiety, depression and occasional psychoses, she is unable to function in a work environment. [She] is unable to perform the following functions: Poor tolerance for social situations, dramatic mood shifts, volatile, phobic response to non-home environments. Severe anxiety in work related, non-home situations. Social intolerance and paranoia." Dr. Archibald did not explain in his affidavit what caused or contributed to the employee's psychological issues.
In its summary-judgment order in favor of the employer, the trial court concluded that "the only objective, verified, credible and authoritative medical evidence, which *504 is undisputed, is the testimony of ... Dr. Janet Cash, a Board Certified Dermatologist, who testified with a reasonable degree of medical probability and a reasonable degree of medical certainty that [the employee] did not contract scabies ...." Thus, the trial court determined that the employee had not "produce[d] any objective medical evidence that she contracted scabies, or that she contracted scabies while on the job." In addition, the trial court concluded that, because the employee had not suffered a physical injury, she could not recover for any alleged psychological injury. See Ex parte Vongsouvanh, 795 So.2d 625, 628 (Ala. 2000) (explaining that, "[u]nder Alabama law, for an employee to recover for psychological disorders, the employee must have suffered a physical injury to the body and that physical injury must be a proximate cause of the psychological disorders"). Moreover, the trial court determined that the employee had not proven that her alleged psychological injury had been proximately caused by her alleged contraction of scabies during her employment.
The employee argues on appeal that the trial court erred by making credibility and factual determinations instead of properly applying the summary-judgment standard. She contends that the evidence before the trial court, viewed in the light most favorable to her, demonstrates that factual issues regarding the employee's alleged contraction of scabies and the causation of her psychological injury exist. We agree.
As we explained above, to survive a properly supported motion for a summary judgment, a nonmovant must present substantial evidence that creates a genuine issue of material fact as to the elements of the nonmovant's claim. See Lee, 592 So.2d at 1038. However,
"[a]t the summary-judgment stage, it is not the trial court's function ' "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." ' Camp v. Yeager, 601 So.2d 924, 927 (Ala. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986) ). Furthermore, ' " 'a court may not determine the credibility of witnesses on a motion for summary judgment.' " ' Wilson v. Teng, 786 So.2d 485, 498 (Ala. 2000) (quoting Ex parte Usrey, 777 So.2d 66, 68 (Ala. 2000), quoting in turn Phillips v. Wayne's Pest Control Co., 623 So.2d 1099, 1102 (Ala. 1993) )."
Nix v. Franklin Cty. Dep't of Human Res., 234 So. 3d 450, 456 (Ala. 2017).
Dr. Cash's testimony indicated that other physicians had diagnosed the employee with scabies. The medical records submitted by the employee indicated that she was diagnosed with scabies or a mite infestation by at least two doctors; in addition, Dr. Stevens, although his notes did not reflect that he diagnosed the employee with scabies, prescribed Elimite, a medication that Dr. Cash described as the standard medication to treat scabies, to the employee. Dr. Cash took issue with those diagnoses, questioning whether the diagnoses were correct or supported by objective testing. However, the trial court erred by determining that Dr. Cash's testimony was the only "credible" evidence regarding whether the employee contracted scabies.
At the summary-judgment stage, the question before the trial court is not whether one witness's testimony or a particular piece of evidence is more credible or convincing than another. Instead, the trial court is to confine itself to determining whether there exists a genuine issue of material fact. The trial court in the present *505 case was presented with conflicting evidence: deposition testimony of one physician indicating that the employee did not have scabies and medical records from other physicians indicating that she had been diagnosed with scabies during or shortly after what the employee testified was an outbreak at her place of employment. A genuine issue of material fact exists, and the summary judgment in favor of the employer, insofar as it is related to the employee's claim seeing workers' compensation for her alleged contraction of scabies, is therefore reversed.
We reach the same conclusion about the summary judgment in favor of the employer on the employee's claim that she suffered a psychological injury. Dr. Archibald's affidavit testimony was that the employee suffered from severe depression with psychosis. Dr. Cash testified that she believed that the employee suffered from delusional parasitosis. Although we have only excerpts of Dr. Cash's testimony, she indicates that the employee may have been suffering from delusional parasitosis even as early as June 2012, when she first complained that she had contracted scabies. Dr. Cash testified that she was not aware of any case in which a person had developed delusional parasitosis from contracting scabies; however, she also testified that it was possible that a scabies infestation could trigger delusional parasitosis if a patient already had a psychiatric disorder.
Although the testimony of the medical professionals contained in the record does not definitively support the conclusion that the employee's psychological condition resulted from the contraction of scabies during her employment, a trial court is not confined to the consideration of solely the testimony of medical experts in determining causation; indeed, a trial court should consider all evidence, both lay and medical, and its own observations in making a determination of medical causation. See Ex parte Bryant, 644 So.2d 951, 952-53 (Ala. 1994). Furthermore, "a trial court may infer medical causation from circumstantial evidence consisting of the sudden appearance of an injury and symptoms immediately following a workplace trauma." Fab Arc Steel Supply, Inc. v. Dodd, 168 So.3d 1244, 1256 (Ala. Civ. App. 2015) (citing 1 Terry A. Moore, Alabama Workers' Compensation § 7:15 (2d ed. 2013)). The totality of the evidence before the trial court, viewed in the light most favorable to the employee, indicates that, since June 2012, the employee has had a firm belief that she is infested by scabies or other bugs despite the medical evidence indicating that she either was not ever or is no longer infested and that she suffers from anxiety, depression, and occasional psychoses that prevent her from functioning in a work environment. If the employee proves that she did, in fact, contract scabies such that she suffered a physical injury, the evidence recited above could form the basis of a conclusion that the employee's psychological condition is related to the contraction of scabies during her employment. Therefore, a genuine issue of material fact regarding whether the employee's alleged contraction of scabies caused her to develop delusional parasitosis or another psychological disorder exists, and the summary judgment in favor of the employer on that issue was improper.
Based on our review of the record, we have determined that the trial court erred in entering a summary judgment in favor of the employer on the employee's claim for workers' compensation benefits arising from her alleged contraction of scabies during the course of her employment and her alleged psychological injury resulting from that alleged contraction of scabies.
*506 The evidence before the trial court was in conflict, and the trial court erred in making credibility determinations to decide the fact questions created by the evidence. The trial court's judgment is therefore reversed, and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
Thompson, P.J., and Pittman, Thomas, Moore, and Donaldson, JJ., concur.

As will be discussed infra, Dr. Cash, in her testimony, discusses the diagnosis of the employee found in certain medical records, including those of Dr. Shelly Ray, whose records are not contained in the record on appeal. Dr. Cash's deposition testimony regarding the records of Dr. Ray is inadmissible hearsay because those records were not appended to Dr. Cash's deposition excerpts. See McMillan v. Wallis, 567 So.2d 1199, 1205 (Ala. 1990). The employee did not move to strike the excerpts of Dr. Cash's testimony, however, and the trial court was therefore permitted to review them in deciding the summary-judgment motion. See McMillan, 567 So.2d at 1205.

The medical records submitted by the employee were not certified and, therefore, are inadmissible hearsay. See Barrett v. Radjabi-Mougadam, 39 So.3d 95, 98 (Ala. 2009). However, because the record does not contain a motion to strike those medical records, the trial court, and this court on appeal, may consider those records in deciding the issues on the merits. Ex parte Secretary of Veterans Affairs, 92 So.3d 771, 776-77 (Ala. 2012).