ALMON, Justice.
This is an action on an open account or an account stated. Murray W. Beasley sued Alfred M. Wilhite and his wife Peggy Wilhite for attorney’s fees for legal work Beasley did for the Wilhites from 1974 through 1983. The case was tried before a jury, which returned a verdict awarding Beasley $123,363.60. The Wilhites’ motion for JNOV, new trial, or remittitur was denied by operation of Rule 59.1, A.R.Civ.P. They argue that the trial court erred in failing to direct a verdict in their favor on the account stated claim and on the portion of the open account claim relating to work performed more than three years prior to the filing of suit, and in charging the jury on the statute of limitations and on the rate of pre-judgment interest.
Beasley represented the Wilhites in legal matters for nearly twenty years, from 1965 until 1983. Beginning in 1973 or 1974, Mr. Wilhite had financial difficulties with his business, and Beasley rendered legal services for which he was not paid at the time. In October 1976, Mr. Wilhite moved to Kuwait, where he began doing business. Mrs. Wilhite moved to Kuwait in May 1977. The Wilhites lived in Kuwait until 1982, although they returned to Alabama periodically. They, or at least Mr. Wilhite, spent the first six months of 1982 in England and then returned to Alabama.
During this time Beasley performed services for the Wilhites, representing Mr. Wilhite in matters concerning his business and maintaining the Wilhites’ affairs at home. Beginning in March 1981, Mr. Wil-hite paid Beasley $1000 a month. It was disputed whether this sum constituted a retainer or was payment for past, current, or future fees. These payments continued through January 1982. In February 1982, Mr. Wilhite paid Beasley $20,000, to be treated as an advance on the $1000 per month fee. In April 1983, Beasley became ill and performed no further services for either of the Wilhites.
Beasley and his wife were friends with the Wilhites. They testified that in March 1981, while the Wilhites were at home from Kuwait, the Wilhites invited them to their house for supper. Mr. and Mrs. Beasley both testified that during this evening Mr. Wilhite said he would pay Mr. Beasley $100,000 in March 1983. Mr. Wilhite later repeated this statement to an associate of his, Steve Bigbee. When Beasley asked Mr. Wilhite about the $100,000 in March 1983, Wilhite responded, “Oh, yeah, I have got it in there for you. Let’s wait until the dust settles,” but he later refused to pay. Mr. Wilhite contends that any such statements he made were in reference to Beasley’s defending him in a dispute he had with some parties in Kuwait, but Beasley contends that there was never any discussion of such representation and that the $100,000 was to pay for past services. Beasley’s claim for an account stated is based on this alleged promise to pay $100,-000.
Beasley bases his claim for open account on services he rendered for the Wilhites between October 1973 and April 1983. He submitted over 150 documents he prepared for the Wilhites during this period and testified as to numerous trips, telephone calls, and conferences to which he devoted his time for them. Beasley estimated that he averaged ten hours per week working for the Wilhites during this ten-year period. Multiplying the number of hours he claimed to have worked by his hourly rate and subtracting the amount of the $20,000 advance “retainer” applicable to the period when he was no longer working for the *105 Wilhites, Beasley testified that he was due more than $400,000 on open account. His complaint sought $450,000 on open account.
The Wilhites first argue that the trial court erred in not granting their motion for directed verdict on the claim for an account stated. They say, first, that there was no evidence that Mrs. Wilhite ever agreed to pay Beasley a specified sum of money, and, second, that Beasley never rendered an account and the evidence would not sustain a finding that Mr. Wil-hite agreed to pay Beasley a specified sum claimed as the balance of an account between the parties.
An account stated
“is an agreement between parties who have had a previous transaction or transactions of a monetary character that the item or items of account representing such transaction or transactions and the balance struck are correct, together with a promise, express or implied, for the payment of such balance.
“ To create a stated account, it is not essential that the statement of the account should be made in writing. The term ‘account’ covers any item of indebtedness by contract, express or implied. An account stated is not founded on the original liability, but on the defendant’s admission that a definite sum is due in the nature of a new promise, express or implied.”
Martin v. Stoltenborg, 273 Ala. 456, 458-59, 142 So.2d 257, 259 (1962) (citations omitted).
The claim that Mrs. Wilhite never promised to pay a stated amount is answered by the facts that Mrs. Wilhite was present at the occasion in March 1981 when her husband made the promise and that she said nothing to deny the liability. In fact, she supported it by telling Beasley that the Kuwait contract was “heavy, heavy, heavy,” implying that it would provide the funds to pay Beasley the amount they owed him. Mrs. Wilhite was aware that Beasley had rendered services for both her and her husband and that he had not been paid. The evidence, therefore, would support a finding that she joined in the promise to pay the $100,000, so the trial court did not err in denying the motion for directed verdict on this ground.
The further argument, that the promise to pay $100,000 was not an agreement to pay a specified sum claimed as the balance due on an account, does not present any ground for reversal, either. Although Beasley had not rendered an account to the Wilhites, Mr. Wilhite, in particular, had been promising to pay the fees due to Beasley before he left for Kuwait and had continued to do so thereafter. It would have been within the jury’s prerogative to find that the $100,000 represented a stated account for all services performed prior to March 1981. Beasley’s testimony as to the actual fees due during this time indicated an even greater amount due.
The remainder of the verdict is supported by the evidence of the services Beasley performed for the Wilhites between March 1981 and April 1983. Even assuming the $1000 per month payments during this period to be fees for services rather than a retainer, Beasley’s testimony that he worked ten hours per week for the Wilhites at $100 per hour would support an additional $3000 per month, or $75,000. This evidence clearly supports the jury’s verdict of $123,363.60. These items of open account were within the three-year statute of limitations, Code 1975, § 6-2-37, so any error in denying the motion for directed verdict on items of open account older than three years before the complaint was filed in August 1983 was harmless. Therefore, we need not address the arguments put forward with respect to the tolling provisions of §§ 6-2-10 and -16.
The trial court erroneously instructed the jury that it could award interest at a rate of 12% per annum. The correct rate is 6%. Code 1975, § 8-8-1; Burgess Mining & Construction Corp. v. Lees, 440 So.2d 321 (Ala.1983). We are reluctant to reverse this case, however, based on an error that can be rectified by a strictly mathematical computation. Therefore, we affirm the *106 judgment conditionally, subject to its being amended on remand to reflect interest computed at 6%.
AFFIRMED CONDITIONALLY AND REMANDED.
TORBERT, C.J., and MADDOX, BEAT-TY and HOUSTON, JJ., concur.