This appeal arises out of a two-count complaint on an account stated and on an open account seeking $19,475.04 for gasoline and petroleum products delivered to, and then sold by, George Gilbert. The complaint was amended to include a claim based on the alleged fraudulent conveyance of property from George Gilbert to his wife, Lillie Mae. After an ore tenus nonjury trial, the court entered a judgment in favor of the plaintiff, Armstrong Oil Company, Inc., in the amount of $19,475.04, plus interest and costs. The court also found that the property had been conveyed to avoid payment of the debt, and declared the conveyances void. The Gilberts appealed, after their motion for a new trial was denied by operation of law. Rule 59.1, A.R.Civ.P. We affirm. *Page 1080 
Armstrong Oil Company ("Armstrong") is in the business of supplying wholesale gasoline and petroleum products to its customers, who sell them at retail. George and Lillie Mae Gilbert owned and operated the Gilbert Grocery in Vance, Alabama. In September 1978, Armstrong and Mr. Gilbert entered into an agreement, and Armstrong began supplying its products to the Gilbert Grocery. The parties agree that the gasoline remained the property of Armstrong until it was pumped from the underground tanks at the Gilbert Grocery into a customer's vehicle. Armstrong supplied Mr. Gilbert with blank "pump report" forms, which Mr. Gilbert completed each week after reading meters on the pumps to determine the amount of gasoline sold the previous week. An Armstrong employee went to the Gilbert Grocery each week to check the completed pump report form and to pick up the money owed by Mr. Gilbert for the products he had sold.
Two copies of the weekly report forms were made — an original and a carbon copy. Mr. Gilbert kept the carbon copy and the Armstrong employee took the original to the Armstrong office. According to Terrell Davidson, the Armstrong representative who made the majority of the weekly visits to the Gilbert Grocery, if Mr. Gilbert paid the full amount owed, an invoice was prepared and marked "Paid." If the Armstrong bookkeeper who checked the reports determined that a mistake had been made on the pump report or that Mr. Gilbert had not paid the exact amount owed, the amount of the shortage or overpayment by Mr. Gilbert was noted on the invoice and on Mr. Gilbert's ledger card. Past due payments Mr. Gilbert made were also noted by Davidson on the report forms. Mr. Davidson testified that the ledger card, which detailed the customer's debits and credits, was mailed to the customer each month.
Armstrong delivered its products to Mr. Gilbert from 1978 until August 1983. At trial, Mr. Davidson testified that Mr. Gilbert's account had a substantial arrearage, so he met with Mr. Gilbert on January 26, 1983, in an attempt to resolve the problem. Mr. Davidson stated that he and Mr. Gilbert compiled copies of the weekly reports and determined that the account was $16,498.02 in arrears. He further testified that they agreed that this amount was due but that efforts to collect it would be temporarily suspended until Mr. Gilbert obtained the money to make the payment. Mr. Davidson said that Mr. Gilbert indicated to Mr. Davidson that he intended to pay the arrearage with insurance proceeds he anticipated receiving, or with a loan from a local bank. The day after the meeting with Mr. Gilbert, an invoice showing the $16,498.02 balance was prepared by Armstrong and a copy was mailed to Mr. Gilbert, according to Mr. Davidson. Armstrong submitted a copy of this invoice into evidence. Mr. Davidson said that this amount was posted on Mr. Gilbert's ledger card, which Armstrong continued to mail to him each month.
For some time after this meeting took place, Mr. Gilbert paid Armstrong for its products in a timely manner, but the May 1983 pump reports, and subsequent ones, show that Mr. Gilbert again failed to make regular payments of the full balance owed to Armstrong. Armstrong stopped delivering its products to Mr. Gilbert in August 1983. Mr. Davidson and his son, Steve, continued their collection efforts on behalf of Armstrong. They testified that Mr. Gilbert acknowledged on numerous occasions that his account was in arrears and that he intended to pay Armstrong out of funds he expected to receive from an insurance refund, from gambling proceeds, or from a bank loan. Armstrong submitted the matter to a collection agency in 1985. A copy of Mr. Gilbert's ledger, with the last entry dated November 16, 1983, and showing a balance of $19,475.04, was admitted into evidence.
At trial, Mr. Gilbert agreed that he began doing business with Armstrong in 1978, and that he met with Mr. Davidson or his son weekly to determine the amount of gasoline sold and the payment owed to Armstrong. He also testified that if he did not pay the entire balance owed at the time it was due, then the remainder was carried over and noted on his account. Mr. Gilbert stated that if Armstrong's bookkeeper corrected *Page 1081 
a pump report after she received it at the office, Armstrong mailed a copy of the corrected form to him. He denied having a conversation with Mr. Davidson in January 1983 about a substantial arrearage in his account with Armstrong. Mr. Gilbert stated that he owed Armstrong nothing in January 1983, and, further, that when he stopped doing business with Armstrong in the fall of 1983, his account was not in arrears. He testified that he did not receive any notices from Armstrong indicating that his account was in arrears until he received a letter from a collection agency in 1985. Finally, Mr. Gilbert denied that he owed the amount that Armstrong claimed.
On July 25, 1983, Mr. Gilbert deeded all his real property to Mrs. Gilbert. Mr. Gilbert testified that his wife paid him $10 for each parcel of property, but he acknowledged that each parcel was worth more than that. The deeds were recorded on May 7, 1985. Mr. Gilbert testified that the only reason he sold the property was so that he would not receive rental income from the property directly, because this would have prevented him from being eligible for insurance coverage through his former employer, the United Mine Workers. Mr. Gilbert admitted that he and his wife continue to jointly spend the income from the rental properties.
On March 12, 1986, Armstrong filed a two-count complaint against Mr. Gilbert, claiming $19,475.04, plus interest and costs, on either an account stated or on an open account. The proceedings were stayed upon Mr. Gilbert's filing of a chapter 7 bankruptcy petition, but the petition was voluntarily dismissed in December 1987. In October 1988, Armstrong amended its complaint by adding Mrs. Gilbert as a defendant and alleging in a third count that Mr. Gilbert had conveyed all his real property to Mrs. Gilbert on July 25, 1983, for the purpose of defrauding Armstrong and Mr. Gilbert's other creditors. Armstrong requested that the conveyances be declared void and that any judgment entered against Mr. Gilbert in the case be declared a lien on the property.
After an ore tenus hearing, the trial court entered a judgment against Mr. Gilbert and in favor of Armstrong on count one, the claim for an account stated. The court assessed Armstrong's damages at $19,475.04, and awarded interest in the amount of $17,819.68. As to the third count, the court found that the conveyances of Mr. Gilbert's property were made for no valid consideration and to avoid the payment of debts, and declared them void. The Gilberts filed a motion for a new trial, which was denied by operation of law pursuant to Rule 59.1, A.R.Civ.P.
The Gilberts argue on appeal that the evidence does not support the trial court's judgment on an account stated. Specifically, they contend that the evidence presented at trial was confusing and indicated that various amounts were claimed by Armstrong, so that the trial court could not have determined that a sum certain was owed by Mr. Gilbert.
Findings by the trial court following an ore tenus hearing are presumed correct, and its judgment based upon those findings will not be disturbed unless it is plainly and palpably wrong or manifestly unjust. McInnis v. Lay,533 So.2d 581 (Ala. 1988). An account stated is an agreement between parties who have had previous monetary transactions that the statement of account and the balance struck are correct and a promise, express or implied, that the debtor will pay that amount. Wilhite v. Beasley, 497 So.2d 103, 105 (Ala. 1986). When an account is rendered or presented to the debtor and the debtor does not object to it within a reasonable time, the failure to object is regarded as an admission that the account is correct, and it becomes an account stated. Karrh v.Crawford-Sturgeon Ins., Inc., 468 So.2d 175, 176
(Ala.Civ.App. 1985). Once the plaintiff proves a prima facie case in an action on an account stated, the burden shifts to the defendant to assert any legal defense available. Id.
A review of the record reveals nothing to overcome the presumption of correctness afforded to the judgment the trial court entered; rather, it reveals ample evidence *Page 1082 
to support Armstrong's judgment. Armstrong submitted exhibits and testimony establishing that Mr. Gilbert repeatedly failed to pay the balance of the account; it submitted a copy of the ledger card that was mailed to Mr. Gilbert, showing a balance of $19,475.04; and it presented the testimony of two of its representatives regarding Mr. Gilbert's acknowledgement of the debt owed and of his various plans for paying the debt. According to the testimony of one of Armstrong's witnesses, Mr. Gilbert did not object to the amount Armstrong claimed he owed, until he received the letter from the collection company in 1985. In summary, the trial court's conclusions, following the ore tenus hearing, that Armstrong proved its prima facie case of an account stated and the court's assessment of Armstrong's damages are not palpably wrong or manifestly unjust.
The Gilberts argue that the evidence does not support the trial court's finding that the conveyances of real property from Mr. Gilbert to Mrs. Gilbert were fraudulent. They note that the conveyances were made in July 1983, before Armstrong ceased doing business with Mr. Gilbert, and they point out that Mr. Gilbert testified at trial that he transferred the property so that he could receive certain insurance benefits.
A conveyance will be declared fraudulent upon a showing of three elements: 1) a creditor to be defrauded; 2) a debtor intending to defraud; and 3) a transfer of property from which the creditor could have satisfied part or all of his claim.Champion v. Locklear, 523 So.2d 336, 338 (Ala. 1988). The law permits a finding of constructive fraud when an indebted grantor conveys property without receiving valuable consideration. Id. Once constructive fraud is alleged in a conveyance among family members, the grantee has the burden of proving that the transaction was supported by valuable and adequate consideration. Reese v. Smoker, 475 So.2d 506, 508
(Ala. 1985). The resolution of a fraudulent conveyance claim depends upon the facts. Where they are disputed, as here, every presumption must be indulged in favor of the trial court's findings, and its judgment will not be disturbed unless it is palpably wrong. Mr. Gilbert testified that his wife paid only $10 for each parcel he conveyed to her, and he admitted that each parcel of property was worth more than that amount. Further, Mr. Gilbert stated that he and his wife jointly spend the rental income from the properties he conveyed to her. Although Mr. Gilbert testified that he conveyed the real estate so that he could receive insurance benefits, the trial court was not bound to believe this testimony. Based on the record, we cannot say that the trial court's finding that the conveyances were fraudulent is palpably wrong and, therefore, it will not be disturbed.
The trial court's factual conclusions and its judgment are supported by the evidence presented in this ore tenus case. The judgment of the trial court is, therefore, due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, HOUSTON and KENNEDY, JJ., concur.