[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11316

Non-Argument Calendar

_____

KEITH REDDICK,

by and through his attorney-in-fact, Wanda Sternberg,

Plaintiff-Appellant,

*versus*

CAPOUANO, BECKMAN, RUSSELL & BURNETT, LLC,

a Limited Liability Company,

Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Middle District of Alabama

D.C. Docket No. 2:19-cv-00512-JTA

————————————

Before BRANCH, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Keith Reddick appeals the magistrate judge's[1] order granting summary judgment in favor of Capouano, Beckman, Russell & Burnett, LLC ("Appellee"), a law firm, on his claims alleging that Appellee committed multiple violations of the Federal Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"). For the following reasons, we affirm the magistrate judge's order granting summary judgment.

## I.    RELEVANT FACTUAL AND PROCEDURAL HISTORY

In October 2006, Reddick signed a "Financial Agreement" with Zelda Court Dental Care, LLC ("Zelda"), wherein he agreed "to pay for services not covered by [his] insurance as well as any legal and/or collection fees necessary for the collection of this

---

[1] In accordance with 28 U.S.C. § 636(c), both parties voluntarily consented to the jurisdiction of the magistrate judge and indicated that they understood that appeal from the judgment would be taken directly to this Court.

debt." According to Bridget Lyons, Zelda's custodian of records, Reddick signed this agreement while opening a joint family account for which his insurance policy would provide coverage for him and his then-wife, Adriana Reddick ("Adriana"). Zelda regarded Reddick as the responsible party for all charges in the joint family account. An account history report Reddick received from Zelda shows a single running account for the Reddicks' services, payments, and insurance credits from July 1, 2010, through October 25, 2012. This account history contains thirty-two type entries titled "PM Note" indicating that statements were processed for Reddick or Adriana. These PM Note entries reflect varying levels of urgency in requests for payment in the description section. On May 23, 2012, the account history reflects: "Statement Processed With Message 'YOUR ACCOUNT NEEDS ATTENTION!! If you are having difficulties paying your bill, call us to discuss payments based on your individual situation.'" On June 25, 2012, the account history reflects: "Statement Processed With Message 'Your account is now 90 days past due. Please contact our office immediately!'" Entries on June 27, 2012, and September 18, 2018, reflect "Letter: C1" and "Letter: 'Final Collection,'" respectively. Moreover, seven of the PM Note entries reference Adriana while other twenty-five reference Reddick. According to the account history, services for Adriana between September 14, 2011, and April 18, 2012, left a balance of $697.00 after her payment of $3,900.00 on March 2, 2012, and an insurance payment of $97.00 on April 18, 2012.

On April 13, 2012, Reddick and Adriana entered into a separation agreement that held Reddick "solely responsible for all personal and marital debts and liabilities, including but not limited to: [c]redit cards, mortgages, leins [sic], state or federal taxes, foreclosure, notes, loans, state unemployment benefits, *or any other debt of any kind whatsoever, whether in* [*Reddick's*] *name only or held by the parties jointly,*" and required him to "indemnify and hold [Adriana] harmless from any efforts of any creditor to collect same." (emphasis added). The final decree of divorce entered on May 25, 2012, specifically incorporated the separation agreement and provided that the agreement was "adopted and deemed a part of this Decree" and would "be considered a Pendente Lite Order of the court."

On July 27, 2012, Zelda issued a notice to Reddick informing him that $697.00 was owed on his account. On September 18, 2012, Zelda issued a formal demand for "payment in full" to be received "within ten days." According to Lyons, these documents were sent by United States Mail, postage pre-paid, to the address provided by Reddick, and "Zelda . . . received no objection from . . . Reddick with respect to the charges noted in that communication or in prior communications." These actions are noted in the account history, but PM Notes referencing Adriana were also entered on August 21, 2012, September 26, 2012, and October 15, 2012. Zelda's records show that it rendered additional services at no cost to Adriana on October 25, 2012, and to Reddick on September 26, 2013, which does not include billing information. Lyons

stated that the joint account was turned over to Appellee for collection after Reddick failed to make payment arrangements following the September 18, 2012, demand for payment in full.

According to Paul Beckman, Jr., a partner in the Appellee law firm responsible for the collection, he had difficulty making contact with Reddick to attempt to collect the debt and eventually learned that Reddick had been incarcerated. Reddick's mother and attorney-in-fact, Willie Clark, responded to his firm's collection letters in April 2018 and informed Beckman that Adriana was responsible for the debt under the provisions of the couple's divorce decree. Beckman subsequently obtained a copy of Reddick's divorce decree and filed a small claims action in state court on behalf of Zelda on July 20, 2018, based upon his belief that Reddick was responsible for the debt under the terms of the divorce decree and that the statute of limitations for the action had not expired. In addition to the $697.00 balance with Zelda, Beckman sought recovery of court costs, interest, and attorneys' fees, which totaled an additional $519.78 in the small claims action.

According to Clark, she emailed "Donna," an employee of Appellee, on July 28, 2018, informing the firm that Reddick had advised Zelda several years earlier that he was not responsible for Adriana's dental services and that Zelda ceased collection efforts as a result. After providing Appellee with Reddick and Adriana's divorce decree and advising that she was willing to remit payment of $697.00, Clark then contacted Zelda on August 3, 2018, and was informed by an employee named "Bridget" that the balance was in

Adriana's name and that Reddick had a zero balance with Zelda. According to Wanda Sternberg, Reddick's current wife, she resided with Reddick from 2014 to 2017 and understood from speaking to Reddick that he told Zelda, "in or around late 2011 or early 2012," that "he was not responsible for the charges made to the account based upon the legal separation" and had received no further statements from Zelda on the joint account. When Appellee sent a demand letter for the debt to Sternberg's residence, she wrote "This is Adriana's Debt" on the letter and returned it to Appellee. According to Sternberg, Adriana incurred the charges after she was legally separated from Reddick and that Sternberg met with attorney Richard Moxley III on several occasions to handle the collection lawsuit filed by Appellee. According to Moxley, he determined that the debt was no longer collectible as an open account with a three-year statute-of-limitations period, or alternatively as an account stated or contract, both of which have a statute-of-limitations period of six years. On August 7, 2018, and again during the week of August 20, 2018, he informed Beckman of his opinion and recommended that the case be dismissed.

On August 8, 2018, Beckman named Adriana as a codefendant in the small claims lawsuit, and Moxley, on behalf of Reddick, filed a motion to dismiss the lawsuit as time-barred under all alternate theories—either as an open account, an account stated, or a contract. Moxley argued that because either limitations period should be calculated from April 18, 2012, i.e., the date of Reddick's last monetary transaction with Zelda wherein it received an

21-11316                Opinion of the Court                7

insurance credit for services rendered to Adriana, the small claims lawsuit filed on July 20, 2018, was time-barred under all circumstances. Beckman filed a motion to dismiss the lawsuit after reaching a financial settlement with Adriana on September 28, 2018, stating that "[t]he Defendant, Adriana Reddick Stout, has paid this account as agreed in the settlement terms."

Reddick then filed an action for damages under the FDCPA on July 19, 2019, alleging that Appellee knew he was not responsible for the charges forming the basis for the small claims lawsuit and knew the applicable statutes of limitation had expired on all of its claims. He further alleged that Appellee's small claims lawsuit for the Zelda debt collection was time-barred and therefore was: (1) an attempt to collect a debt not legally owed through the use of false and/or misleading representations in violation of 15 U.S.C. § 1692e(2), (5), and (10); and (2) the taking of an illegal action against Reddick in violation of 15 U.S.C. § 1692f(1). Accordingly, Reddick sought actual and compensatory damages pursuant to 15 U.S.C. § 1629k(a)(1), statutory damages of $1,000 under § 1692k(a)(2)(A), and costs and attorney's fees pursuant to § 1692k(a)(3).[2]

---

[2] Reddick also brought several state law claims against Appellee, but those claims are not the subject of this appeal as Reddick did not oppose Appellee's motion for summary judgment as to those claims below, and Reddick does not challenge the district court's grant of summary judgment in favor of Appellee on those claims.

On June 30, 2020, Appellee filed a motion for summary judgment on the FDCPA claims.  As an initial matter, Appellee asserted that the Zelda debt was properly collectible from Reddick, relying mainly on the divorce decree and settlement agreement.  Appellee then argued that it was entitled to summary judgment on the FDCPA claims because it filed the state lawsuit for collection on a valid debt owed within the six-year limitations period applicable to accounts stated and contracts under Alabama law.  Specifically, Appellee calculated the limitations period from September 28, 2012—the due date for the payment demanded by Zelda on the account balance for services rendered to Reddick and Adriana.  Even if the district court determined that the lawsuit was not timely filed, Appellee asserted that Reddick's treatment and payments in 2013 extended the statute of limitations, and, alternatively, that the limitations period was tolled by Sternberg's fraudulent representations regarding the divorce decree, which estopped Reddick from asserting a statute-of-limitations defense in the underlying collection action.  Appellee also contended that it was entitled to the defense of bona fide error, *see* 15 U.S.C. § 1692k(c), arguing that the information provided to Beckman suggested that the claim was timely filed, that Appellee used policies and procedures to avoid filing the lawsuit outside the statute of limitations, and that Sternberg's false

representations prevented the lawsuit from being timely filed under Reddick's analysis of the limitations period.[3]

In response to Appellee's motion for summary judgment, Reddick argued that he demonstrated that a genuine issue of material fact exists as to whether the account was an open account subject to a three-year limitations period and whether Appellee's collection lawsuit was time-barred on the filing date of July 20, 2018. Even if the district court concluded that the account was an account stated, Reddick asserted that the collection lawsuit was time-barred, arguing in part that Appellee failed to produce any evidence concerning the mailing, proper mailing, or mailing in due course of the two collection letters Appellee submitted. Specifically, Reddick calculated the limitations period from April 18, 2012—the date of Reddick's last monetary transaction with Zelda for services to Adriana. Reddick further contended that he had demonstrated a genuine issue of material fact existed as to whether he had *in personam* liability for all charges made to the account with Zelda, including those charges made by Adriana. As for Appellee's bona fide error defense, Reddick asserted that Appellee failed to establish that it had employed, implemented, and maintained procedures to

---

[3] In its earlier answer to Reddick's complaint that Appellee filed on August 12, 2019, Appellee affirmatively alleged that "the alleged actions of [Appellee] and its agents and employees are protected by the 'bona fide error' defense since such actions or inactions, if they occurred, were not intentional and resulted from a bona fide error notwithstanding [Appellee's] maintenance of procedures reasonably adapted to avoid such errors."

avoid filing a lawsuit against a time-barred debt and that Appellee failed to plead the defense with particularity. Reddick also filed a motion to strike Appellee's affirmative defense.

On March 18, 2021, the magistrate judge granted summary judgment in favor of Appellee on Reddick's FDCPA claims. The magistrate judge first noted that under the limitations period for FDCPA actions provided in § 1692k(d), the only collection activity that could form the basis of a valid FDCPA claim was Appellee's filing of the small claims suit to recover on the Zelda debt because Reddick filed his federal lawsuit just within one year of the small claims action. Next, the magistrate judge found that Appellee acted as a "debt collector" and was engaged in collection activity for purposes of 15 U.S.C. § 1692a(6) when Appellee filed the small claims action.

The magistrate judge then turned to Reddick's FDCPA claims under § 1692e and noted that two issues had to be resolved to determine if Appellee was entitled to summary judgment on those claims: "(1) whether [Reddick] was responsible for the Zelda debt, and (2) whether the small claims lawsuit was barred by the applicable statute of limitations." As to the question of whether Reddick was responsible for the Zelda debt, the magistrate judge found that the undisputed evidence showed Reddick's consent to and knowledge of his responsibility for expenses arising from services to Adriana when he opened his account with Zelda. Even believing Clark and Sternberg's statements that Reddick disavowed responsibility for payment of Adriana's dental expenses after their

separation and divorce, the magistrate judge found that such evidence did not refute that Reddick entered the Zelda agreement in 2006 and later agreed to pay the Zelda debt during the divorce in April 2012 under the separation agreement. As for Sternberg's statements that Reddick told Zelda "in or around late 2011 and early 2012" that he was no longer responsible for Adriana's charges "based upon the legal separation" and that Adriana "incurred those subject charges after [Reddick and Adriana] became legally separated," the magistrate judge concluded that there was no genuine dispute that Reddick entered into the Zelda agreement in 2006 and later entered into the April 2012 separation agreement and was therefore responsible for the Zelda debt during the time at issue. As for Clark's statement that she emailed "Donna" on July 28, 2018, and advised her that "[Reddick] had previously advised Zelda . . . several years ago . . . that he was not responsible for the charges," the magistrate judge concluded that it did not establish a genuine dispute of material fact for trial as to Reddick's responsibility for the Zelda debt, characterizing Clark's statement as "vague" and noting that it failed to provide a specific year or time range of when Reddick allegedly made the statement to Zelda.

The magistrate judge then addressed the statute of limitations issue and noted that, under Alabama law, if the Zelda debt was an open account with a three-year statute of limitations period, the small claims lawsuit was time-barred, but if the Zelda debt was a breach of contract or account stated with a six-year statute of limitations period, then the small claims lawsuit was timely. After

reviewing Alabama law and cases regarding the distinctions between open accounts and accounts stated, the magistrate judge found that the joint account with Zelda was an open account but that it was converted into an account stated because it was rendered and not objected to within a reasonable time. Specifically, the magistrate judge relied on evidence showing that Zelda rendered a statement to Reddick when it mailed a demand for payment on September 18, 2012, to Reddick's known address and that the communication was presumed received under Alabama's mailbox rule. Because Reddick did not object to the balance demanded within the ten-day window specified in the demand for payment, the magistrate judge concluded that the open account was converted into an account stated.

The magistrate judge also rejected the argument that Reddick did not impliedly consent to the amount stated in the Zelda statement. Even after considering Clark and Sternberg's statements that Reddick disavowed responsibility for payment of Adriana's dental expenses after their separation and divorce, the magistrate judge ruled that such statements did not establish that Reddick objected to the Zelda demand for payment within the ten-day window in September 2012. Specifically, the magistrate judge concluded that Lyons's assertion that Reddick did not object to the charges in the September 2012 payment demand was undisputed and no genuine issue of fact existed on the issue.

Moreover, the magistrate judge found the September 2012 payment demand from Zelda sufficient to transform Reddick's

open account into an account stated under Alabama law even though the payment demand did not itemize the charges assessed on the account. The magistrate judge explained that the evidence showed that Zelda issued a statement of the account showing the balance due from Reddick and that his failure to object within a reasonable time impliedly created an account stated, which served as an admission of the correctness of the account. Accordingly, the magistrate judge concluded that Reddick did not establish the presence of a genuine dispute as to whether his Zelda account was an open account and ruled that the "[c]ollections on the account were therefore actionable within the six-year statute of limitations calculated from September 29, 2012, the date after which [Reddick] was required to pay and failed to do so."

The magistrate judge further ruled that the Zelda debt was also subject to the six-year statute of limitations applicable to a breach of contract. The court reasoned that Reddick admitted the Zelda agreement was "a contractual guarantee related to [Reddick]," that the statute of limitations period on a contract action runs from the time that a breach occurs under Alabama law, that Reddick agreed to pay debts owed for services to Zelda in the Zelda agreement, and that Reddick breached the contract in September 2012 when he failed to pay despite his agreement to do so. The magistrate judge therefore determined that expiration of the six-year limitations period did not occur until September 2018. Because Appellee's filing of the small claims lawsuit on July 20, 2018, was within the six-years limitation period from the date of

Reddick's default on the account stated or breach of contract, the magistrate judge concluded that the lawsuit was not a time-barred collection action in violation of § 1692e and granted summary judgment in favor of Appellee on Reddick's § 1692e claims.

The magistrate judge then addressed Reddick's allegations that Appellee took illegal actions against Reddick in violation of §§ 1692f and 1692f(1). The court noted that the "crux" of Reddick's claim was that Appellee knew Reddick was not responsible for the Zelda debt and knew that the statute of limitations had expired when it filed the small claims lawsuit. In light of her determinations that Reddick was responsible for the Zelda debt and that the statute of limitations had not expired at the time Appellee filed the small claims lawsuit, the magistrate judge granted summary judgment in favor of Appellee on this claim. The magistrate judge also concluded that Reddick's § 1692f must fail because Reddick did not present evidence that Appellee used fair or unconscionable means to collect the Zelda debt.

As for Reddick's motion to strike Appellee's affirmative defense of bona fide error,[4] the magistrate judge denied the motion as untimely because it was filed almost a year after Reddick received Appellee's answer to the complaint and therefore outside of Federal Rule of Civil Procedure 12(f)'s deadline of twenty-one days.

---

[4] Appellee also filed four motions to strike below, which the magistrate judge denied, but they are not at issue in this appeal.

Moreover, the magistrate judge ruled that Reddick had not demonstrated prejudice.  Reddick filed a timely notice of appeal.

## II.    STANDARD OF REVIEW

We review a magistrate judge's grant of summary judgment *de novo, Campbell v. Sikes,* 169 F.3d 1353, 1361 (11th Cir. 1999), and view all of the facts in the light most favorable to the non-moving party, *Haynes v. McCalla Raymer, LLC,* 793 F.3d 1246, 1248 (11th Cir. 2015).  Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## III.    ANALYSIS

On appeal, Reddick argues that the magistrate judge erred in granting summary judgment to Appellee as to his FDCPA claims.  Specifically, he contends that (1) the magistrate judge erred by holding him personally liable to Zelda for the debts incurred by Adriana, and (2) the evidence creates a genuine issue of material fact as to whether Appellee filed the underlying collection lawsuit after the expiration of the statute-of-limitations period, violating the FDCPA.  We first explain the background and relevant provisions of the FDCPA and then turn to Reddick's arguments.

### A. Background and Relevant FDCPA Provisions

The FDCPA regulates the conduct of debt collectors in order to protect consumers, with the express purpose of "elimi-nat[ing] abusive debt collection practices by debt collectors." § 1692(e); *accord Trichell v. Midland Credit Mgmt., Inc.,* 964 F. 3d

990, 994 (11th Cir. 2020); *Holzman v. Malcolm S. Gerald & Assocs., Inc.*, 920 F.3d 1264, 1269 (11th Cir. 2019). Specifically, the FDCPA prohibits a debt collector from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt," § 1692e, or using "unfair or unconscionable means to collect or attempt to collect any debt," § 1692f. As a mechanism for enforcement, the FDCPA provides a private right of action in which "any debt collector who fails to comply with any provision of [the FDCPA] with respect to any person is liable to such person" for "any actual damage sustained by such person as a result of such failure," § 1692k(a)(1), and "such additional damages as the court may allow," subject to statutory caps, § 1692k(a)(2)(A). *See Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011).

We have previously held, albeit within the context of a Chapter 13 bankruptcy proceeding, that a debt collector's filing of a claim barred by the statute of limitations violates the FDCPA. *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1261 (11th Cir. 2014). However, the Supreme Court effectively overruled *Crawford* when it held that a debt collector's filing of a proof of claim that clearly indicated that the statute of limitations had run was not "false, deceptive, misleading, unfair, or unconscionable" within the meaning of the FDCPA in the context of a Chapter 13 bankruptcy proceeding. *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1415-16 (2017); *see also In re Soler Somohano*, 819 F. App'x 873, 876 (11th Cir. 2020) (recognizing that *Crawford* was effectively overruled by *Midland Funding*). In its decision, the Supreme Court

expressed doubt that a debt collector's assertion of a claim known to be time barred is "unfair" in the context of an ordinary civil action to collect a debt but "assume[d], for argument's sake, that the precedent is correct in that context." *Id.* at 1413. Like the Supreme Court in *Midland Funding*, we assume for purposes of this decision that a debt collector's filing of a claim in an ordinary civil action to collect a debt barred by the statute of limitations violates the FDCPA.

### B. Reddick's Responsibility for the Zelda Debt

Neither party disputes the magistrate judge's rulings that Reddick has been the object of collection activity—namely, the filing of the small claims lawsuit—arising from consumer debt, that Appellee was a "debt collector" within the meaning of § 1692a(6), and that Appellee was engaged in collection activity when it filed the small claims action against Reddick. However, Reddick argues that the district court erred by holding him personally liable to Zelda for the debts incurred by Adriana because the 2006 Zelda agreement is a guaranty related to the charges incurred by Reddick and does not state that it guarantees the debts of any other individual. He therefore asserts that the agreement does not create *in personam* liability for Adriana's debts with Zelda and that the guarantee does not trigger Alabama's six-year statute-of-limitations period for breach of contract because he did not breach the agreement.[5]

---

[5] Appellee contends that Reddick "failed to even attempt to address the breach of contract statute of limitations in his Brief," that he therefore abandoned any

*See* Ala. Code § 6-2-34(9) (requiring "[a]ctions upon any simple contract or speciality not specifically enumerated in this section" to be commenced "within six years").

However, the evidence in the record supports the magistrate judge's determination that there is no genuine dispute that Reddick was responsible for the Zelda debt.  First, while Reddick characterizes the Zelda financial agreement with Zelda as simply a guaranty related to charges incurred by Reddick, the language of the agreement, Lyons's testimony, and the account history report establish the opposite.  The October 2006 financial agreement with Zelda, which Reddick signed, provides that he agreed "to pay for services not covered by [his] insurance *as well as any legal and/or collection fees necessary for the collection of this debt.*"  (emphasis

---

argument in that regard, and that the judgment must be affirmed.  Appellee further asserts that Reddick does not mention or address his execution of the financial responsibility agreement with Zelda.  However, Reddick expressly argues in his initial brief that "because the agreement does not create *in personam* liability for Adriana's debts with Zelda . . . , the guarantee does not trigger a six-year statute of limitations for breach of contract," and that Reddick "cannot breach the agreement by not undertaking an act that is not legally required to be undertaken."  A fair reading of Reddick's initial brief shows that he addresses the breach of contract statute of limitations and that "the agreement" he refers to is the financial responsibility agreement with Zelda.  Accordingly, Reddick did not abandon any argument on those grounds.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed.").

added).  Lyons also explained that Reddick "opened a family ac-count" with Zelda, that Reddick "indicated that an insurance policy in . . . Reddick's name would provide coverage for both [Reddick] and Adriana for services provided by Zelda," and that Reddick and Adriana had "only one single joint account."  Moreover, the ac-count history report shows that Zelda maintained a single record for the services it rendered to Reddick and Adriana as well as the payments it received from Reddick's insurance and Reddick and Adriana themselves.  Even viewing the record evidence in the light most favorable to Reddick, the evidence supports the magistrate judge's determination that there is no genuine dispute that Reddick was personally liable for the Zelda debt and that Reddick breached the agreement when he failed to pay for the owed debt.  Second, as Appellee correctly notes, Reddick fails to address in his initial brief the other basis for the magistrate judge's conclusion that Red-dick was responsible for the Zelda debt—Reddick and Adriana's April 2012 separation agreement and final decree of divorce incor-porating that agreement.  Accordingly, he has abandoned any chal-lenge to this basis for the magistrate judge's order, *see Sapuppo*, 739 F.3d at 680, and Reddick's arguments in his reply brief regard-ing the divorce decree are waived, *see Egidi v. Mukamai*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in a reply brief are deemed waived.").  For these reasons, the magistrate judge cor-rectly determined that Reddick was personally liable for the Zelda debt and that Alabama's six-year limitations period applied when Reddick breached the financial agreement and failed to pay for the

debt owed by the ten-day window provided in the September 18, 2012, letter. *See* Ala. Code § 6-2-34(9); *Honea v. Raymond James Fin. Servs., Inc.*, 240 So. 3d 550, 566 (Ala. 2017) (explaining that Alabama law provides generally for a six-year statute of limitations in an action on a contract); *AC, Inc. v. Baker*, 622 So. 2d 331, 335 (Ala. 1993) ("The statute of limitations on a contract action runs from the time a breach occurs rather than from the time actual damage is sustained."); *Seybold v. Magnolia Land Co.*, 376 So. 2d 1083, 1086 (Ala. 1979) ("Where a contract provides no fixed time for performance, the claimant must generally make a demand for performance in order to put the other party in default; and, if a demand for performance is required, the demand should be made within a reasonable time after it lawfully can be made.").

### C. Applicable Statute of Limitations

Reddick next argues that he demonstrated that a genuine issue of material fact as to whether the Zelda account is an open account or account stated. He contends that the Zelda account was and remains an open account because (1) the evidence below failed to establish that the account was balanced and rendered to Reddick, namely because there was no testimony concerning the proper mailing or mailing in due course of the statement of account, collection letters, and other correspondence, and (2) the evidence fails to establish that Reddick either expressly or impliedly accepted the balance in light of Sternberg and Clark's testimonies. Reddick therefore submits that the Zelda account was stale and

time-barred for purposes of collection when Appellee filed the small claims lawsuit.

As noted by the former Fifth Circuit, "[t]he question of account stated or open account is not a mere matter of procedure or of different forms of action, but is also a substantive question as to different kinds of claims." *Ingalls v. Ingalls Iron Works Co.*, 258 F.2d 750, 751 (5th Cir. 1958).[6]  Under Alabama law, "[a]ctions to recover money due by open or unliquidated account" must be commenced within three years of "the date of the last item of the account or from the time when, by contract or usage, the account is due." Ala. Code. § 6-2-37(1).  Open accounts "[t]raditionally . . . arise in situations in which credit is extended ancillary to the creditor's primary business and is provided to customers as part of a transaction for the purchase of goods or services." *Cadence Bank, N.A. v. Robertson*, No. 1190997, 2021 WL 1230165, at *4 n.3 (Ala. April 2, 2021).  To establish an open account, "there must be an account based upon running or concurrent dealings, the dealings must not have been closed, settled or stated, and some term of the contract must remain to be settled between the parties, or the agreement must contemplate further transactions between the parties." *Rose Manor Health Care, Inc. v. Barnhardt Mfg. Co., Inc.*, 608 So. 2d 358, 360 (Ala. 1992) (quoting 1 C.J.S., *Account, Action*

---

[6] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit prior to October 1, 1981).

*on*, § 3 at 606-07 (1985)).  A plaintiff establishes a prima facie case in an action for money due on an open account by presenting evidence that "money was delivered to the defendant, that it was a loan, and that it has not been repaid."  *Livingston v. Tapscott*, 585 So. 2d 839, 841 (Ala. 1991).

In contrast to actions to recover money due on an open account, "[a]ctions for the recovery of money upon a loan, upon a stated or liquidated account or for arrears of rent due upon a parol demise" must be commenced within six years.  Ala. Code § 6-2-34(5).  The Alabama Supreme Court has summarized the nature of an account stated as follows:

> An account stated is a post-transaction agreement.  It is not founded on the original liability, but is a new agreement between parties to an original account that the statement of the account with the balance struck is correct and that the debtor will pay that amount.  It is as if a promissory note had been given for the balance due.
>
> A prima facie case on an account stated is made when the plaintiff proves (1) a statement of the account between the parties is balanced and rendered to the debtor; (2) there is a meeting of the minds as to the correctness of the statement; and (3) the debtor admits liability.  The debtor's admission to the correctness of the statement and to his liabiilty [sic] thereon can be express or implied.  An account rendered, and not objected to within reasonable time

> becomes an account stated, and failure to object will
> be regarded as an admission of correctness of the ac-
> count.  Once the plaintiff proves his prima facie case,
> the burden of proof shifts to the defendant.

*Car Ctr., Inc. v. Home Indem. Co., Inc.*, 519 So. 2d 1319, 1322–23 (Ala. 1988) (emphasis omitted) (citations omitted) (quoting *Univ. of S. Ala. v. Bracy*, 466 So. 2d 148, 150 (Ala. Civ. App. 1985)); *see also Gilbert v. Armstrong Oil Co., Inc.*, 561 So. 2d 1078, 1081 (Ala. 1990); *Wilhite v. Beasley*, 497 So. 2d 103, 105 (Ala. 1986); *Martin v. Stoltenborg*, 142 So. 2d 257, 259 (1962).  Alabama courts have held that a letter demanding payment of a simple amount of a claim renders an account, and it becomes an account stated when the debtor fails to object to the rendered account within a reasonable amount of time.  *See Home Fed. Sav. & Loan Assoc. v. Williams*, 158 So. 2d 678, 682–83 (Ala. 1963); *Yarbrough v. Armour & Co.*, 15 So. 2d 281, 283 (Ala. 1943); *see also Williams*, 158 So. 2d at 683 (noting that "it is not essential that the account should be in writing" in order to create an account stated).

While Reddick argues that there was no testimony below concerning the proper mailing or mailing in due course of the statement of account or collection letters, Lyons's testimony shows the opposite.  According to Lyons, she sent the September 18, 2012, demand letter "by United States Mail, postage pre-paid, at the address provided by Reddick for such communications," and "Zelda . . . received no objection from . . . Reddick with respect to the charges noted in that communication or in prior communications."

Reddick compares Lyons's testimony to the testimony in *Car Center* where the Alabama Supreme Court ruled that there was no competent testimony concerning the proper mailing or mailing in due course of the statement of account because an affidavit "merely recite[d] that '[a] statement for this amount was sent to [the debtor].'" 519 So. 2d at 1323 (second alteration in original). Unlike Lyons's testimony, however, the testimony in *Car Center* contained "no facts describing mailing procedures or knowledge of mailing procedures." *Id.* Accordingly, the September 18, 2012, letter is presumed to have been received by Reddick. *See Currie v. Great Cent. Ins. Co.*, 374 So. 2d 1330, 1332 (Ala. 1979) ("The presumption of the law is that a letter, properly addressed with sufficient postage, and unreturned to the sender whose address is shown on the envelope, was received by [the] addressee.").

To rebut this presumption and to support his argument that the evidence fails to establish that Reddick either expressly or impliedly accepted the balance, Reddick relies on the testimonies of Sternberg and Clark. According to Sternberg, Reddick told Zelda "in or around late 2011 and early 2012" that he was no longer responsible for Adriana's charges "based upon the legal separation and that . . . [Reddick] received no further statements from Zelda." Sternberg further stated that "[d]uring the time [she and Reddick resided together from approximately 2014 to 2017], there were no statements from Zelda . . . received at our residence." Clark testified that she emailed "Donna," an employee of Appellee, on July 28, 2018, informing the firm that Reddick "had previously advised

[Zelda] several years ago that he was not responsible for the charges" and that Zelda ceased collection efforts as a result. Even viewing this evidence in the light most favorable to Reddick, it does not establish that Reddick did not receive or object to the September 18, 2012, letter demanding "payment in full" to be received "within 10 days." The relevant timeframes in Sternberg's testimony do not concern late 2012, and we cannot conclude that Clark's statement that Reddick denied responsibility for the Zelda debt "several years ago," creates a genuine dispute as to this issue. See Fed. R. Civ. P. 56(e); Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) ("[O]ne who resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial." (alteration in original) (quoting Gossett v. Du-Ra-Kel Corp., 569 F.2d 869, 872 (5th Cir. 1978))).

Even assuming that the Zelda account is an account stated, Reddick submits that he demonstrated that a genuine issue of material fact exists as to whether the limitations period had expired prior to July 20, 2018—when Appellee filed the small claims action. He asserts that the six-year limitations period began to toll approximately ninety days before June 25, 2012, at the very latest, relying on prior PM Note entries in the account history report and the Zelda PM Note entry on that date indicating as follows: Statement Processed With Message 'Your account is now 90 days past due. Please contact our office immediately!'" However, none of these entries (which simply advise Reddick as to the status of his account)

show that the account was rendered prior to the September 18, 2012, demand letter or, alternatively, prior to Reddick's implied admission of the correctness of the Zelda account by failing to object within the ten days as provided in the demand letter. *See Mobile Rug & Shade Co. v. Daniel*, 424 So. 2d 1332, 133 (Ala. Civ. App. 1983) ("[A]n account stated is an account balanced and rendered, with an assent to the balance, expressed or implied; so that the *demand* is essentially the same as if a promissory note had been given for the balance." (alteration in original) (emphasis added) (quoting *Sinclair Refining Co. v. Robertson*, 23 So. 2d 872, 873 (Ala. 1945))). Reddick disputes that these PM Note entries "'merely' advise Reddick to the status of his account," but he points to no language reflecting a demand for payment. Even viewing the record in light most favorable to Reddick, there is no evidence demonstrating that the small claims lawsuit for collection of the Zelda debt was filed outside of the six-year limitations period—either as an action to recover money upon an account stated or as an action to recover money upon Reddick's breach of contract when he failed to pay following Zelda's September 2012 demand for payment—and therefore time-barred in violation of the FDCPA. Accordingly, the magistrate judge properly granted summary judgment in favor of Appellee on Reddick's FDCPA claims.[7]

---

[7] On August 24, 2021, Appellee filed a motion to strike portions of Reddick's reply brief addressing the proper calculation of the statute of limitations for a breach of contract action, as well as arguments related to fraud tolling the statute of limitations in the underlying collection action and the bona fide error

## IV.    CONCLUSION

For the foregoing reasons, we affirm the magistrate judge's order granting summary judgment in favor of Appellee on Reddick's FDCPA claims.

**AFFIRMED.**

---

defense, Reddick has not filed a response.  While our review of Reddick's initial brief shows that he generally argued that the Zelda agreement did not trigger a six-year limitations period for breach of contract and that there was no breach because he was not personally liable for the Zelda debt, he failed to make any argument in his initial brief regarding the *calculation* of the statute of limitations for a breach of contract action or any arguments related to fraud tolling the statute of limitations in the underlying collection action and the applicability of the bona fide error defense.  We therefore grant Appellee's motion to strike.  *See Egidi*, 571 F.3d at 1163 ("Arguments not properly presented in a party's initial brief or raised for the first time in a reply brief are deemed waived.").  However, in light of our decision affirming the magistrate judge's grant of summary judgment on grounds it expressly considered, we do not address Appellee's arguments that it was alternatively entitled to summary judgment on Reddick's FDCPA claims because (1) the limitations period was extended by fraud, (2) Reddick was estopped from asserting a statute of limitations defense, or (3) the bona fide error defense applies as a matter of law and insulates Appellee from liability under the FDCPA.